JĀMES W. BREEDLOVE AND WILLIAM L. ROBESON, PLAIN-
TIFFS IN ERROR V. THEODORE NICOLET AND J. J. SIGG.

*Jurisdiction.* The plaintiffs, aliens, were residents of the state of Louisiana
at the time of the execution of the note sued on in the district court of
the United States for the eastern district of Louisiana, and continued to
reside in New Orleans since, having a commercial house there; they are,
however, absent six months in the year; but when absent have their agent
to attend to their business. The defendants in the suit were residents
of the city of New Orleans, and citizens of the state of Louisiana, when
the note was given. The residence of aliens within the state constitutes
no objection to the jurisdiction of the federal court.

The commercial partnership, the drawers of the note upon which the suit
was instituted, was composed of three persons, one of whom was a resi-
dent citizen of Alabama, and out of the jurisdiction of the court when the
suit was brought, and the remaining two, the defendants, were resident
citizens of Louisiana. Held: that although the suit being against two of
the three obligors might not be sustained at common law; yet as the
courts of Louisiana do not proceed according to the rules of the common
law, their code being founded on the civil law, this suit is properly
brought.

The note being a commercial contract, is what the law of Louisiana denomi-
nates a contract *in solido;* by which each party is bound severally as well
as jointly, and may be sued severally as well as jointly.

The plaintiff Sigg was denominated in the petition and writ " J. J. Sigg."
The omission of his christian name at full length was alleged as error. By
the court. He may have had no christian name. He may have assumed
the letters " J. J." as distinguishing him from other persons of the name
of Sigg. Objections to the name of the plaintiff cannot be taken ad-
vantage of after judgment. If J. J. Sigg was not the person to whom
the promise was made; was not the partner of Theodore Nicolet & Co.;
advantage should have been taken of it sooner. It is too late to allege it
as error in this court.

The petitioners aver that they are aliens. This averment is not contradicted
on the record, and the court cannot presume that they are citizens.

If originally aliens, they did not cease to be so, or lose their right to sue
in the federal court, by a residence in Louisiana. Neither the constitu-
tion nor the acts of congress require that aliens should reside abroad to
entitle them to sue in the courts of the United States.

The suit not having been brought against Bedford, one of the partnership,
it was not necessary to aver that he was subject to the jurisdiction of the
courts of the United States.

After issue joined in the district court, the defendants filed a plea that the
firm of Theodore Nicolet and Company, the plaintiffs, consisted of other

persons in addition to those named in the writ and petition, and that those other persons were citizens of Louisiana. The court, after receiving the plea, directed that it be taken from the files of the court. Held, that this was a proceeding in the discretion of the court; and was not assignable as error in this court.

The plea was offered after issue was joined on a plea in bar, and the argument of the cause had commenced. The court might admit it; and the court might also reject it. It was in the discretion of the court to allow or refuse this additional plea. As it did not go into the merits of the case, the court would undoubtedly have acted right in rejecting it.

All the proceedings in a case are supposed to be within the control of the court while they are in paper, and before a jury is sworn, or judgment given. Orders made may be revised, and such as in the judgment of the court may have been irregular or improperly made, may be set aside.

Construction of the insolvent laws of Louisiana.

IN error from the district court of the United States for the eastern district of Louisiana.

This action was instituted in the district court by Theodore Nicolet and J. J. Sigg, both averred to be aliens, and citizens and subjects of the republic of Switzerland, but at present residing and trading in the city of New Orleans, under the firm and style of Theodore Nicolet & Co.

The petition of the plaintiffs sets out a joint and several demand against J. R. Bedford, James W. Breedlove, and William L. Robeson, formerly partners in trade, and doing business in the said city under the firm and style of Bedford, Breedlove & Robeson. The cause of action was a promissory note, subscribed by Bedford, Breedlove & Robeson, for two thousand nine hundred and sixty-four dollars and ten cents, dated at New Orleans 22d November 1826, payable sixty days after date to the order of the petitioners. The petition then avers that said Bedford, Breedlove & Robeson, have become indebted to the petitioners in the amount of said note, with interest and costs.

It further avers that Breedlove and Robeson are citizens of the state of Louisiana, and reside in New Orleans, and that each of them liable, as aforesaid; and prays that Breedlove and Robeson may be cited, and that judgment be rendered against them, jointly and severally, for the amount due. Attached to the petition is an affidavit, setting forth that Breedlove and Robeson are jointly and severally indebted, &c.

Two separate writs of capias ad respondendum were issued,

[Breedloye and Robeson v. Nicolet and Sigg.]

the one against Robeson, the other against Breedlove, upon which they were severally arrested and held to bail, under a special order of the judge.

In June 1829, the defendants filed their joint and separate answer to the petition, in which, reserving all legal exceptions, they aver that the said commercial house of Bedford, Breedlove & Robeson, of which they were partners, having become embarrassed by misfortunes, after the execution of the note sued on, to wit, March 16, 1827, made out a full and complete schedule, exhibiting the debts due by them, and the property and debts belonging and due to them jointly and severally, which said property was duly accepted by the judge of the parish court, for the benefit of the creditors placed upon said schedule.

Among their creditors were the plaintiffs, Theodore Nicolet & Co. then residents of New Orleans, in the state of Louisiana, and who were also residents of the same place at the time of the execution of the note now sued on.

After the said acceptance so made by said parish judge, a meeting of the creditors of Bedford, Breedlove and Robeson, was duly called. At the appointed time and place the creditors who assembled approved of the acceptance of the property made by the judge as aforesaid. Upon these proceedings judgment of discharge was finally rendered in favour of the defendants.

Afterwards the original note was filed, to wit, January 4, 1830, and, on the following day, viz. January 5, 1830, the defendants filed a plea to the jurisdiction.

In this plea, after setting out the note, they allege that the district court cannot properly exercise jurisdiction over the case, because they allege that said note was drawn by Bedford, Breedlove and Robeson, payable to the order of T. Nicolet & Co., who indorsed and assigned the same to one Frederick Beckman, who indorsed and assigned the same to J. J. Sigg, who assigned the same to Theodore Nicolet & Co. the present plaintiffs. The defendants then aver that said firm of T. Nicolet & Co. is composed of various other persons than the said Theodore Nicolet and J. J. Sigg; that, among the part-

ners in said firm, one Germain Mussen, and one M. P. Durell, and one Charles Lessept, all and each of whom are citizens of the United States, and state of Louisiana.

Further, they aver that Frederick Beckman, a remote indorser on said note, was, prior to the 5th July, 1828, and at the time of his transfer to J. J. Sigg, an alien, and a subject of the Hanseatic Towns: that, on the 5th July, 1828, he became a citizen of the United States, and state of Louisiana, and was so at the time of the institution of this suit, &c.

This plea was filed on the 5th January, after the hearing of the cause had been commenced, and the objection of the petitioners' counsel against then receiving it, was overruled.

On the 20th May 1830, on motion to reconsider and annul the order of January which permitted the defendants to file the plea to the jurisdiction, it was objected that it came too late, the cause having been put upon the jury calendar, and regularly called on that calendar for trial.

The court rescinded the order. 1st, Because it was not filed in time; the defendants having pleaded to the merits before oyer was given of the note; and, upon this plea, the cause was at issue when the plea to the jurisdiction was filed. 2d, Oyer of the note was not necessary to enable a party to plead in abatement the citizenship of the plaintiffs; that both branches of the plea to the jurisdiction deny the capacity of the plaintiffs to sue, and, therefore, ought to have been pleaded in abatement, and before issue joined on the merits; and that no material step was taken in the cause, between the reception of said plea and its subsequent rejection on reconsideration.

On June 7th, 1830, the cause came on for trial, when the following facts were admitted on the record :

That the persons, composing the firm of T. Nicolet & Co. were residents of the state at the time of the execution of the note sued, and have continued so up to the present time;

That they are absent about six months in the year; but, when so absent, have their agents to attend to their business, and their commercial house has existed in New Orleans ever since the execution of said note;

That Breedlove and Robeson were residents of the city of New Orleans, and citizens of the state of Louisiana.

[Breedlove and Robeson v. Nicolet and Sigg.]

The proceedings under the insolvent law of Louisiana were admitted in evidence.

The plaintiffs filed the protest of the note, which appears to have been made November 22, 1827, at the instance of Frederick Beckman.

On the 10th of June 1830, judgment was entered for the following terms:

The court having maturely considered this case, now order and adjudge, that judgment be entered up in favour of the plaintiffs against the defendants, jointly and severally, for the sum of twenty-nine hundred and sixty-four dollars and ten cents, with interest at the rate of five per cent per annum, from the twenty-fourth day of January 1827, until paid, and costs of suit.

To reverse this judgment the defendants prosecuted this writ of error.

The case was argued by Mr Coxe, for the plaintiffs in error, and by Mr Livingston, in a printed argument, for the defendants.

Mr Coxe contended that the judgment of the district court was erroneous, and ought to be reversed.

1. Because the action was irregularly instituted, no process having been sued out against Bedford; one of the partners, and the suit being a joint as well as a several one.

2. Because neither in the petition, writ, or in any part of the proceedings, is the christian name of Sigg set forth; which is essential.

3. Because there is no evidence that the petitioners were aliens, and, as such, authorized to sue in the courts of the United States; but the only facts in the case which can be judicially recognized, show them to have been at the date of the note, and still to continue, residents of New Orleans, and of the state of Louisiana.

4. Because, even if originally aliens, and never naturalized, such residence deprives a party of his right to sue in the courts of the union, as an alien.

VOL. VII.— 3 C

5. Because there is no averment, or proof, that Bedford, one of the parties to the note, was subject to the jurisdiction of the courts of the United States.

6. Because the plea to the jurisdiction, under the circumstances apparent on the record, was lawfully filed, and ought not to have been taken from the files of the court.

7. Because the plaintiffs, being parties to the insolvent proceedings, were stopped from questioning the sufficiency of the discharge.

1. The note on its face shows that there were three persons who were drawers of the instrument; and this is also stated in the petition for process against the plaintiff in error. The petition sets forth that by thus jointly drawing the note in question, a joint and several responsibility was incurred. Yet process is prayed only against two of the parties, and no excuse is assigned for the omission to join the other party; no death is suggested, nor is it alleged that two only of the parties to the note were parties in the firm.

The remedy on such a contract, is, by the local law of Louisiana, the same as it would be at the common law, as a joint contract. Civil Code of Louisiana, 678, sect. 2, art. 2080.

But if the remedy be several as well as joint, there is equal error in the judgment of the district court. If a joint liability is to be enforced upon a joint contract, all the parties must be sued together; or if a separate as well as joint liability is the obligation of the contract, each of the persons must be separately sued, if this separate liability is to be enforced. A suit against two of them, bound by a joint and several contract, cannot be maintained. 2 Saund. on Pl. and Evid. 708; Streatfield v. Holliday, 3 T. R. 782. If it appear on the pleadings that another should have been joined, who has been omitted, the defendant may demur, arrest the judgment, or bring a writ of error. 1 Saund. Plead. and Evid. 14.

The judgment is joint and several. For th. there is no authority in the law of Louisiana, and still less in the common law. Civil Code of Louisiana, 2081.

2. The omission of the christian name of Sigg, one of the plaintiffs below, is error. It is essential to all legal proceedings

[Breedlove and Robeson v. Nicolet and Sigg.]

that the names of the parties litigant shall be set forth; in civil suits the parties must be particularly named.    1 Bac. Ab. 50 ; King v. Harrison, 8 T. R. 508 ; 3 Caines's Rep. 170 ;. 1 Pennington's Rep. 75, 137.

3. There is nothing on the record to show that the plaintiffs below were aliens, and this was essential to give, as it is to maintain the jurisdiction of the district court; and it is on the ground of the alienage of the plaintiffs that the jurisdiction is claimed.    But it appears that they were residents of Louisiana at the date of the note, and at the institution of the suit.

The allegation of alienage being necessary to give jurisdiction to the court, it must be proved on the trial, on the general issue.    1 Paine, 194.

The presumption growing out of the facts which appear on the record is, that the plaintiffs were citizens of Louisiana, and consequently not authorized to sue other citizens of the same state in the federal court.    If they were originally aliens, as residents of Louisiana at the time of the contract and of this suit, they are not competent to sue as aliens in the federal court.

The language of the constitution in reference to this subject does not employ the technical term "alien," but with a guarded phraseology confers jurisdiction in cases between "a state or citizen thereof, and foreign states, citizens or subjects." This form of expression seems rather to have been drawn from the laws of nations, than from any municipal code.

The object of this provision was to give to the general government, judicial authority over all subjects which might involve diplomatic discussion with foreign powers.

The eleventh section of the judiciary act of 1789, employs the word "alien," but it must be considered in subordination to the clause in the constitution.    How then is this language understood in legal adjudication.    Cited, 2 Gallis. 130 ; 2 Cranch, 64 ; 7 Cranch, 506, 511, 536, 542 ; 2 Dall. 41 ; The Joseph, 1 Gallis. 545, 551 ; 8 Cranch, 253, 254, 277 ; 3 Wheat. 14, 50 ; 6 Am. Law Journal, 83.

These cases show conclusively, 1. The national character of an individual is to be determined by the fact of residence.

2. That as to his capacities, as well as his disabilities, the same rule is to be observed.

The consequences of allowing foreigners domiciliated among us all the privileges of citizens, and all the immunities of aliens, are unjust. They thus obtain advantages which ought not to be conceded to them. Whenever they please, they may sue in the state courts, but their opponents cannot remove the cause. Whenever they think proper they may sue in the federal courts. Thus the policy of the law and the interests of the country are defeated. That policy is to induce aliens of character to become naturalized; but by giving these privileges, bounties are held out to avoid it.

In the same clauses of the constitution, and of this act of congress, provisions are made in cases of controversies between citizens of different states.

In settling questions arising under these provisions, the courts of the United States have exclusively regarded the naked fact of domicil. There is no such character recognized as a citizen of a state, further than he is a citizen of the United States, residing in a particular state, 4 Dall. 360; Coxe's Dig. 26; Cooper's Lessee v. Galbraith, 3 Wash. C. C. Rep. 546.

4. According to the law of Louisiana, the parties to suits may avail themselves of the privilege to have their causes tried by a jury; or they may prefer adopting the ordinary mode of a trial by the court. In the latter case, the trial is in conformity with the civil law; and the removal to the superior court is in the nature of an appeal, carrying up the entire record; the evidence as well as the pleadings.

The jurisdiction of the appellate court comprehends errors in law and errors in fact; and on this ground there is a fatal defect, that the record does not exhibit any proof of the parties who constituted the firm of Theodore Nicolet and Company, at the time of the contract. 2 Saund. Plead. and Ev. 704; 5 T. R. 709; the note was payable to Theodore Nicolet and Company.

It is equally fatal that there is no evidence to show that the plaintiffs had been made legally liable for the note as indorsers. The note had passed into various hands; it was held by one

Beckman; and unless they had been legally charged by the subsequent holders of the note with the payment of it, they would have no right of action against the drawers.

5. The insolvent proceedings in the record show that the plaintiffs in error were discharged by the court in which the same were instituted. To these proceedings the defendants in error were parties, and the contract was made with them in the state of Louisiana, so that they were bound by the insolvent laws of this state. Cited Ogden v. Saunders, 12 Wheaton, 213.

Mr Livingston, for the defendants in error, presented the following printed argument.

The first point made by the plaintiffs in error and defendants below is, that the suit was irregularly instituted; because no process was sued out against Bedford, one of the partners, the suit it is alleged being joint as well as several.

To maintain this position, the plaintiffs in error rely on authorities from the civil code of Louisiana, and others drawn from the rules of pleading at common law. If the first should sustain his position, he must prevail; with the second we have nothing to do in this cause.

I. The first inquiry is what was the nature of the obligation on which the suit was brought? It is a promissory note drawn by a mercantile firm consisting of three members; of whom two of the defendants in the original suit reside in the city of New Orleans, and the other is an inhabitant of Alabama.

The contract, then, being a commercial one, is, by the law of Louisiana, an obligation *in solido*; for the performance of which each of the parties is severally, as well as jointly, bound, and may be either jointly or severally sued.

The plaintiffs in error have cited article 2080 of the Civil Code of Louisiana, which provides that all the parties to a *joint* contract must be defendants to the suit; this is not denied, but this is an obligation *in solido*, not a joint one. It is defined by articles 2086, of the same code.

" There is an obligation in solido on the part of the debtors when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is

[Breedlove and Robeson v. Nicolet and Sigg.]

made by one of them, exonerates the other." This definition is taken from Pothier, *Traite d'obligation*, part 2, ch. 3, art. 8, sec. 1, No. 261.

"An obligation *in solido* is not presumed; it must be expressly stipulated;" but it adds, "this rule ceases to prevail where an obligation in solido takes place of right by virtue of some provisions of law." Civil Code of Louisiana, art. 2088. This article is also taken from Pothier, ubi supra, No. 265; and he gives as one of the cases in which it is presumed "when partners in commerce contract debts on account of their commerce."

This then being a debt so contracted by partners, is an obligation *in solido:* what are its effects as to obligors? Article 2088, "The creditor of an obligation in solido may apply to any one of the debtors he pleases, without the debtor having the right to plead the benefit of division." If then the plaintiffs below could have sued each of the partners in a separate suit, the error relied on is that he has sued two of them. Whether the common law authorities cited prove the position, is thought immaterial; because all that is required by the rules of pleading in Louisiana is, that the case be set out according to the truth, and that the law applicable to it entitles the party to relief.

Here the facts set forth in the petition are not denied; they show an obligation on each of the two parties made defendants to pay a certain sum; the prayer of the petition is that they may be decreed to comply with it exactly in the manner in which it was made, and the judgment is in precise conformity with the law that governs the case.

What would be the effect of allowing the exception? To force the plaintiff below to bring two actions in order to produce the same result obtained by one; a result, which it is the evident intent of the Louisiana mode of proceeding to avoid. Article 2081 of the Code is cited, to prove that the judgment ought not to have been jointly and severally entered: that article only directs the mode in which judgments on a *joint* obligation shall be rendered; and so far as it applies to the case, it shows that the judgment must conform to the nature of the obligation, which it does in our case.

II. The next objection is that the christian name of Sigg

is omitted; if there be any force in the observation, it comes now too late; the object of setting forth the name is to prove the identity of the person; but if that is done to the satisfaction of the party below, he cannot take advantage of it here: the plaintiff in the suit below is designated as J. J. Sigg, this is sufficient to a common intent; but non constat, that he had any other name. The two letters prefixed to his surname form distinct sounds, and why may not the godfather of Mr Sigg, have given him those names? Suppose a woman named Ellen, was to called herself in the pleadings L. N. would it not be sufficient, unless an exception was made to false spelling. As well might the creditors of the defendants attempt to set aside their own discharge; the designations of both of them are liable to the same objections. The one is called James *W.* Breedlove, and the other, William *E.* Robeson: now these intermediate letters may either be intended as the initial of some other name or they may merely be placed there to designate by their sound, the one individual from another; this last is a very common occurrence—if then a letter can perform this office when placed between two names, why may it not when placed simply before one.

III. The third objection, that the plaintiffs below were not proved to have been aliens is answered in two ways. 1st, By saying that this court have no means of knowing what was proved. This is not an appeal. That mode of reviewing judgments below is only given to this court, in cases of equity and admiralty—this case is neither. If the defendants below had thought the evidence insufficient, they might have spread it on the record by a bill of exceptions. This they have not done.

In the case of Parsons v. Bedford et al. 3 Peters, 433, this court decided that they could not examine into the facts so as to reverse a judgment below. It is true that was after a verdict, and the provision of the constitution in that respect was thought by the court to apply; but the reasons urged by the counsel and many of them used by the court, would seem to bear with propriety on a case like this.

In the case of Parsons v. Armor, 3 Peters, 414; the court went into a consideration of the case arising on the facts: but

they do so under an express declaration that they consider the case as coming under the description, either of a bill of exception, or a case submitted; for there all the facts were stated on the record to have been either agreed by the parties, or stated by depositions and documents. Here, on the contrary, there is no such statement of facts, and the certificate of the clerk is only that "the foregoing pages contain a transcript of the record and process, together with all the proceedings relating thereunto, the judgment of the court, bills of exception and documents therein referred to, and the writ and citation in error and return." Not a word mentioned of the evidence. So that this court cannot determine that no proof was offered that the plaintiffs below were aliens.

But secondly, whether proof were made of this fact or not is totally immaterial,—it is averred in the petition, and the only fact in issue by the answer is the discharge.

IV. A point not stated in the printed case seems to have been insisted on at the hearing, viz : that it does not appear by the record, that any proof was made that Nicolet and Sigg are the persons composing the firm.

To this, the same answers apply that were given to the third objection.

V. This objection (4th in the printed statement) appears to be tantamount to saying that residence and citizenship are synonymous. It has been repeatedly decided, that one of the parties being a resident of a different state from the other, will not give jurisdiction to the courts of the United States. Citizenship or alienage must be satisfactorily stated.

VI. The want of an averment that Bedford was subject to the jurisdiction of the court. The answer to this objection has been anticipated in that which was given to the first error assigned. Bedford was not a party to the suit. Those only are parties against whom process is prayed. The contract being in solido, he was not a necessary party.

VII. That the court did right in receiving the plea to the jurisdiction after the trial had begun, and were wrong in afterwards directing it to be withdrawn, is a position which appears contradictory to the best established rules of pleading. That the plea came too late. See 1 Mason, 364; The Sloop Abby,

1 Peters, 450, 498; 4 Mason, 437; 4 Peters, 480; 1 Martin's Rep. N. S. p. 4. That the court have a right to reverse their interlocutory decrees and to ratify an error while within their reach. 2 Cranch, 33; 3 Martin's Rep. N. S.

VIII. An objection, not in the printed copy, seems to have been insisted on in argument, that by the protest of the note while in the hands of Beckman, and the record of the suit brought by Sigg, as well as by the indorsements, it appears that the note had been the property of those persons respectively, and that it ought to have been snown that they were capable of suing in the court of the United States. If the objection were good in point of law, it fails under the circumstances of this case; because all the reasoning which applies to that which is founded on the alleged incapacity of the plaintiffs, may be used against this. But the ground is in itself untenable, although the payee of a note may have indorsed it to ar other, and he to a third; yet whenever it comes back to the nands of the payee, he holds it in his original right, and not under the subsequent indorsers.

IX. The last ground relied on is, that the appeals were discharged by the proceedings set forth in the record; and the cases of Ogden v. Saunders and Bergh and Zacarie v. Saunders, are relied on. The inference to be drawn from these decisions is directly the reverse; that aliens and citizens of other states are not bound by state insolvent or bankrupt proceedings, unless, as in the case of Clay, the creditor had made himself a party to the proceedings by appearing or accepting his dividend. But even admitting that the plaintiffs, as aliens, were bound by a regular proceeding under the state law, they are not bound by this.

The proceedings of Breedlove and Robeson are under the state law, passed 20th February 1817, 2 Lislet's Digest, 424.

That law has several essential provisions, which, before this court can confirm his discharge, must appear to have been complied with :

1. By the eighth section, the judge to whom application is made, must, after he is convinced that the formalities prescribed by the act have been complied with, order the creditors to be

called, in the manner and within the time directed for repeals by the Civil Code, art. 4, tit. 16, book 3; this reference is to the Civil Code then in force; but the same provisions have been transferred to the new code now before the court, and are found in article 3054; one part of which is, that "the creditors shall be summoned to attend by process, issued from the court, if the creditors live within the parish where the meeting shall take place." No such process appears by the record, yet the plaintiffs are admitted to have resided in the parish, and they excepted to the introduction of the insolvent proceedings, because they were not cited as parties (see bill of exceptions, p. 12).

This is a fatal error. There are many others.

2. The said law does not authorize any judgment of discharge from the debts, as is pronounced by the Parish judge, in the proceedings (p. 47), see sect. 28.

3. By the second section, the debtor is obliged to file with his proceedings an account of his losses. No such account appears in his proceedings.

4. By the seventh section, if the appraised value of the property surrendered do not amount to more than one third of the debts, he shall not receive the benefit of the act, unless the losses are proved by the oaths of two witnesses. There is no appraised property, and no oath to prove the losses.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This suit was instituted in the court of the United States for the eastern district of Louisiana, by Theodore Nicolet and J. J. Sigg, subjects of the republic of Switzerland, merchants and partners, trading under the firm of Theodore Nicolet & Co., against James W. Breedlove and William L. Robeson, members of a commercial company consisting of J. R. Bedford, James W. Breedlove and William L. Robeson, merchants and partners, formerly doing business under the firm of Bedford, Breedlove and Robeson.

The petition, which in the courts of Louisiana supplies the place of a declaration at common law, is founded on a promissory note in the following words:

$2964 10.                    *New Orleans, Nov.* 22, 1826.

Sixty days after date we promise to pay to order of Messrs Theodore Nicolet & Co. twenty-nine hundred sixty-four and ten hundredths dollars, value received.

BEDFORD, BREEDLOVE AND ROBESON.

In June 1829, the defendants filed their plea and answer, setting forth that after the execution of the said note, their affairs having become embarrassed, they made out a full and complete schedule, exhibiting all their property and the debts due to and from them, which said property was duly accepted by the judge of the Parish court for the benefit of the creditors placed on the said schedule, among whom were the plaintiffs. Theodore Nicolet & Co., who were then and at the time of the execution of the said note, residents of New Orleans. The answer then sets forth at large the proceedings after the acceptance of the property, and the final discharge of the defendants by the judgment of the Parish court, given in pursuance of the laws of the state, which judgment they plead in bar of the action.

Afterwards, in January 1830, the cause came on for trial, when the following entry was made. " This cause came on for hearing before the court, when, after hearing the arguments of counsel in part, it is ordered that this cause be set for trial on the jury docket on the plea filed this day." And afterwards, on the same day, " came the defendants by their counsel and filed the following plea."

This plea objects to the jurisdiction of the court, because the note in the petition mentioned was drawn by Bedford, Breedlove and Robeson, payable to the order of Theodore Nicolet & Co.; which said firm of Theodore Nicolet & Co. is composed of other persons than the said Theodore Nicolet and the said J. J. Sigg : to wit, Germain Musson and others, all and each of whom are citizens of the United States and state of Louisiana.

The plea farther alleges, that Frederick Beckman, a remote indorser on the said note, had since the indorsement become a citizen. The plaintiffs objected to the reception of this plea to the jurisdiction, because it came too late.

Afterwards, in May 1830, the court, on a re-hearing, over-

[Breedlove and Robeson v. Nicolet and Sigg.]

ruled the plea to the jurisdiction which had been received at the January term.   The defendants excepted to this decision.

The cause came on for trial before the court, a jury not having been required, when the following admissions were made.

" It is admitted that the persons composing the firm of T. Nicolet & Co. were residents of the state at the time of the execution of the note sued, and have continued so up to the present date ; that they are, however, absent about six months in the year, but, when so absent, have their agents to attend to their business ; and that their commercial house has existed in New Orleans ever since the execution of the said note.  It is also admitted that, at the time of the execution of the said note, the defendants J. W. Breedlove and William L. Robeson were residents of the city of New Orleans, and citizens of the state of Louisiana. "

These admissions are of no importance in the cause.  The residence of aliens within the state constitutes no objection to the jurisdiction of the federal court.

The defendants offered in evidence the record of the bankrupt proceedings from the parish court.   It was admitted that the meeting of the creditors was duly advertised in the public prints.   The plaintiffs objected to the admission of this record, but the court determined that it should be read.

The defendants also gave in evidence the record of the proceedings of the court in a suit brought by the plaintiff, J. J. Sigg, on the same note, against Bedford, Breedlove and Robeson, to which the defendants, James W. Breedlove and William L. Robeson, appeared, and pleaded to the jurisdiction of the court, on which the suit was discontinued on motion of the plaintiffs' counsel.

In June 1830, the court rendered its judgment in favour of the plaintiffs for the amount of the note, with interest ; which judgment is brought before this court by writ of error.

The plaintiffs assign the following errors in the proceedings of the district court.

1st.  The action was irregularly instituted, no process having been sued out against Bedford, one of the partners, and the contract being joint as well as several.

2d. Neither in the petition, writ, or in any part of the proceedings, is the christian name of Sigg set forth.

3d. There is no evidence that the petitioners are aliens. They are shown to have been at the date of the note, and to the time of the trial, residents of New Orleans.

4th. If originally aliens, their residence in New Orleans renders them incapable of suing in the courts of the United States.

5th. There is no averment or proof that Bedford, one of the parties to the note, was subject to the jurisdiction of the court.

6th. The plea to the jurisdiction was properly filed, and ought not to have been taken from the files of the court.

7th. The plaintiffs being parties to the insolvent proceedings, were stopped from questioning the sufficiency of the discharge.

1. The first error assigned, that the suit is brought against two of three obligors, might be fatal at common law. But the courts of Louisiana do not proceed according to the rules of the common law. Their code is founded on the civil law, and our inquiries must be confined to its rules.

The note being a commercial partnership contract, is what the law of Louisiana denotes a contract *in solido*, by which each party is bound severally as well as jointly, and may be sued severally or jointly. The Civil Code of Louisiana, article 2080, directs, "that in every suit on a joint contract all the obligors must be made defendants; and the succeeding article directs that "judgment must be rendered against each defendant separately, for his proportion of the debt or damages."

Article 2086 says, "there is an obligation *in solido* on the part of the debtors, where they are all obliged to the same thing, so that each may be compelled for the whole." Article 2088 says, "an obligation *in solido* is not presumed; it must be expressly stipulated."

This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law." Pothier, from whom this article appears to be taken, part 2, ch. 3, art. 8, gives, in number 266, as one of the instances in which the law presumes it, "where partners in commerce contract some obligation in respect of their joint concern."

This then is a contract in solido, on which the parties may

[Breedlove and Robeson v. Nicolet and Sigg.]

be sued severally or jointly, and by which each is liable for the whole.

The Civil Code, so far as we are informed, does not affirm or deny that a suit may be sustained on such a contract against two of three obligors. The rules of practice in Louisiana, so far as we understand them, require that the petition should state the truth of the case, and should show a right in the petitioner to recover. It is not denied that this petition states the case truly, nor is it denied that the petitioner has a right to recover from the defendants the sum demanded. It is alleged that he has not a right to recover it in the form of action which he has adopted. He might have obtained a judgment against each for the whole sum, but not, it is said, against two of them, in one action. If this be the rule of the common law, it is a mere technical rule, not supported by reason or convenience. No reason other than what is merely technical can be assigned for requiring the additional labour and expense of two actions for the attainment of that which may be as well attained by one. We have no reason for supposing that this technical principle has been engrafted on the civil law. The contrary is to be inferred from the practice of that branch of it with which we are familiar. It is a rule in chancery that all those against whom a decree can be made, shall be brought before the court, if they are within its jurisdiction. A court of equity, proceeding on the principles of the civil law, would not tolerate separate actions in this case. That court, in a case of which it would take cognizance, might require that all those bound in the note should be brought before it in the same suit, not that separate actions should be brought against those who might be sued in one. On the principles of the civil law it would seem that the defendants may be required to account for not joining the third promissor in the suit, not for joining two of them. The record contains ample evidence to this point.

In the bankrupt proceedings given in evidence by the defendants in the district court, the petitioners state John R. Bedford to be a resident of the state of Alabama, and the schedule required by law also states him to be of Alabama.

In the record of the proceedings brought by J. J. Sigg on the same note, against Bedford, Breedlove and Robeson, the defend-

[Breedlove and Robeson v. Nicolet and Sigg.]

ants pled to the jurisdiction of the court, and alleged in their plea that John R. Bedford, one of the members of the firm of Bedford, Breedlove and Robeson, was not a citizen of the state of Louisiana, but is an inhabitant and citizen of the state of Alabama. The suit was discontinued on the motion of the plaintiffs' counsel.

It was then fully shown to the court that Bedford could not have been joined in the action; and it has been repeatedly decided that in chancery, if the court can make a decree according to justice and equity between the parties before them, that decree shall not be withheld because a party out of its jurisdiction is not made a defendant, although he must have been united in the suit had he been within reach of the process of the court. In this case the judgment conforms to right and justice, since the plaintiffs were entitled to claim the full sum from each of the defendants.

In a question of doubtful practice, it ought not to be entirely disregarded, that the defendants in the district court have not taken this objection, though they pled to the jurisdiction of the court. 2 Pothier, p. 2, ch. 3, art. 8, no. 270, 271, would seem to indicate that more than one, and less than all the obligors, when bound in solido, may be joined in the same suit.

We think there was no error in joining two of the defendants in the same action.

2. The plaintiff Sigg is denominated in the petition and writ J. J. Sigg. The omission of his christian name, at full length, is alleged to be error. He may have had no christian name. He may have assumed the letters "J. J." as distinguishing him from other persons of the surname of Sigg. Objections to the name of the plaintiff cannot be taken advantage of after judgment. If J. J. Sigg was not the person to whom the promise was made, was not the partner of Theodore Nicolet & Co., advantage should have been taken of it sooner. It is now too late.

3. The petition avers that they are aliens. This averment is not contradicted on the record, and the court cannot presume that they were citizens.

4. If originally aliens, they did not cease to be so, or lose their right to sue in the federal court, by a residence in Louisiana. Neither the constitution nor acts of congress re-

quire that aliens should reside abroad to entitle them to sue in the courts of the United States.

5. The suit not having been brought against Bedford, it was not necessary to aver or prove that he was subject to the jurisdiction of the courts of the United States.

6. The sixth objection is, that the plea to the jurisdiction was lawfully filed, and ought not to have been taken from the files of the court.

This plea was, that the firm of Theodore Nicolet & Co. consisted of other persons in addition to those named in the writ and petition, and that those other persons were citizens of Louisiana.

It is admitted that a constitutional or legal disability in the court to exercise jurisdiction over the parties, may be taken advantage of by plea in abatement, but they must be parties. If they are not, the objection is of a different character. In the case at bar those persons who, if named as plaintiffs, might have ousted the jurisdiction of the court, were not plaintiffs. To make them so, was preliminary to any objection to them. The plea, therefore, was to be considered as objecting to the writ and petition, because all the members of the firm of Theodore Nicolet & Co. are not named. The incapacity of those members to sue, was to be considered after they became plaintiffs. If persons who ought to join in a suit do not join in it, the objection is not to the jurisdiction of the court on account of their invalidity to sue, but because the proper plaintiffs have not all united in the suit. The plea is to be considered as if the averment that Germain Musson and others were citizens of Louisiana, had not been contained in it.

This plea was offered after issue was joined on a plea in bar, and the argument of the cause had commenced. The court might admit it, and the court might also reject it. It was in the discretion of the court to allow or refuse this additional plea. As it did not go to the merits of the case, the court would undoubtedly have acted rightly in rejecting it. But it was received, and the question is, whether, after its reception, all power over it was terminated.

All the proceedings are supposed to be within the control of the court while they are in paper, and before *a jury is sworn* or

a judgment given. If so, the orders made may be revised, and such as in the judgment of the court may have been irregularly or improperly made, may be set aside. If such be the discretion of the court, this is not a case in which a supervising tribunal will control that discretion. The court very properly thought that after issue was joined and the argument commenced, an additional plea not going to the merits, but which might defeat the action, ought not to have been received. We are not prepared to say, they exceeded their power in correcting this order and setting it aside. If they did not exceed their power, they have committed no error in this exercise of it.

7. The seventh and last error assigned is, that the plaintiffs, being parties to the insolvent proceedings, were stopped from questioning the sufficiency of the discharge.

The act of Louisiana, passed on the 20th of February 1817, section 8, relative to the voluntary surrender of property, and to the mode of proceeding, &c. directs when the judge shall be satisfied that the debtor is entitled to the benefit of the act, " he shall order that the creditors of said debtor be called in the manner and within the time prescribed for respites by the Civil Code, art. 4, title 16, book 3 ; and he shall appoint a counsellor to represent the creditors absent or residing out of the state, if there be any mentioned in the schedule."

The provision referred to, is in title 18, articles 3052, 3053, 3054, in the volume in possession of the court.

The language of the code is, " the respite is either voluntary or forced. It is voluntary when all the creditors consent, &c."

" It is forced when a part of the creditors refuse to accept the debtor's proposal; and when the latter is obliged to compel them, by judicial authority, to consent to what the others have determined in the cases directed by law."

The forced respite takes place when the creditors do not all agree, for then the opinion of the three-fourths, in number and in amount, prevails over that of the creditors forming the other fourth, and the judge shall approve such opinion, and it shall be binding on the other creditors who did not agree to it.

But in order that a respite may produce that effect, it is necessary,

1. That the debtor should deposit, &c.

[Breedlove and Robeson v. Nicolet and Sigg.]

2. That a meeting of the creditors of such debtor, domiciliated in the state, shall be called on a certain day at the office of a notary public by order of the judge, at which meeting the creditors shall be summoned to attend, by process issued from the court, if the creditors live within the parish where the meeting shall take place, or by letters addressed to them by the notary, if they are not residing in the parish.

It is further directed that the meeting, as well as its object, be advertised in English and in French.

It was admitted that this advertisement was made; but it is not admitted nor proved that the petitioners were summoned to attend by process from the court, or by letters addressed to them by the notary. Nor did they appear voluntarily.

Is the judgment binding on them?

It is unquestionable that summary proceedings of this description must be regular, and that their regularity must be shown by the party who relies on them. Notice to the creditors is material, and the law prescribes that notice and defines it. Advertisement in the papers is not sufficient. Personal notice must be given to a resident within the parish, by process; to a non-resident, by a letter from the notary. The law deems this notice indispensable, and the court cannot dispense with it. For want of it the judgment of discharge was no bar to this action.

There are other irregularities in the proceedings, but want of notice is fatal, and it is unnecessary to notice them.

Judgment affirmed, with costs and damages, at the rate of six per cent per annum.