**Denise Thomas CLEMENTS, et al.**

v.

**Leroy M. CLEMENTS, et al.**

**Civ. A. No. 85–5230.**

United States District Court,
E.D. Louisiana.

June 16, 1987.

Trudy H. Oppenheim, New Orleans, La., for plaintiff.

Grier J. Gregory, Metairie, La., Edward A. Shamis, Jr., Slidell, La., David M. Cambre, New Orleans, La., for defendant.

## ORDER OF DISMISSAL

LIVAUDAIS, District Judge.

Christopher Corey Posey, aged twelve, finds himself the center of a legal maelstrom of claims, counterclaims, defenses and denials. It is not the first time. After Christopher's mother, now Denise Thomas Clements, divorced Curtis E. Posey and obtained custody of the child, he was kidnapped by his father. Once he was returned to his mother, Christopher acquired a stepfather, Leroy Clements. According to the allegations of Mrs. Clements, Christopher's second experience of family life was again turbulent. During her second marriage, Mrs. Clements claims the boy was forced to witness domestic conflict, culminating in a spectacular battle in the Clements' Slidell, Louisiana home on November 15, 1984. On that epic occasion, the combatants included not only Mr. and Mrs. Clements, but Mrs. Clements' parents, relatives and friends; the pleadings allege that nine-year-old Christopher watched as threats were hurled and household furnishings destroyed, until the St. Tammany Police, summoned by Mr. Leroy Clements, put a stop to the domestic disturbance. (PTO pp. 3 and 5.)

The Clements continued to live together for a short time thereafter. They were judicially separated on May 15, 1985; Mrs. Clements and Christopher moved to Texas. On November 13, 1985, Mrs. Denise Thomas Clements filed the instant suit in this Court as administratrix of the estate of her minor son, Christopher Corey Posey. (Rec. Doc. 1.) She alleges that Leroy Clements, by fighting with her in front of Christopher, has done a quarter of a million dollars of psychological damage to the child. Mr. Clements has responded with a denial and a counterclaim of $150,000 in damages against Mrs. Clements for malicious prosecution and defamation. (Rec.Doc. 2.) In addition, Mr. Clements impleaded as third-party defendants his insurers, New Hampshire Insurance Company (New Hampshire)

and St. Paul Fire and Marine Insurance Company (St. Paul), on the ground that his liability insurance policies in effect on the date of the alleged tort included coverage for negligent injury within his home. The companies, he asserted, were in breach of their obligation to defend him. (Rec.Doc. 2.) Mrs. Clements then amended her complaint, adding New Hampshire and St. Paul as defendants, and specifying that her husband acted out of negligence, rather than intent, in the fight which injured Christopher psychologically.

The plaintiff predicates her claim to federal jurisdiction on 28 U.S.C. § 1332, diversity of citizenship; she is domiciled in Texas, Mr. Clements in Louisiana. Considering the price tag on psychiatric treatment, it is plausible that the amount in controversy exceeds $10,000. However, under the domestic relations exception to the diversity statute, this Court must decline to hear the case for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3).

The domestic relations exception to federal jurisdiction has a long and distinguished genealogy. The Supreme Court of the United States, over a century ago, recognized this judicially created exception in *Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1859). Later decisions extended its scope beyond the Court's original disclaimer of jurisdiction over divorce and alimony. *In re Burrus,* 136 U.S. 586, 594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890) contains the Supreme Court's much-quoted, sweeping assertion that "[t]he whole subject of the domestic relations of husband and wife, parent and child" is a state rather than a federal concern. *See also Simms v. Simms,* 175 U.S. 162, 167, 20 S.Ct. 58, 60, 44 L.Ed. 115 (1899), and *Ohio ex rel. Popvici v. Agler,* 280 U.S. 379, 383–84, 50 S.Ct. 154, 154–55, 74 L.Ed. 489 (1930).

The Fifth Circuit "approvingly acknowledge[d]" the domestic relations exception to federal jurisdiction in *Crouch v. Crouch,* 566 F.2d 486, 487 (5th Cir.1978). Policy reasons calling for federal absention in this area included "the strong state interest in domestic relations matters, [and] the competence of state courts in settling family

disputes." The Court of Appeals confined federal jurisdiction over disputes between former spouses to those which do not implicate the marital relationship. Thus, breach of a predivorce property agreement, an issue which "involved no litigation of questions regarding the parties' marital relationship," was found to be within the federal court's jurisdiction in *Jagiella v. Jagiella*, 647 F.2d 561, 564 (5th Cir.1981). That same case delineates the boundary of federal jurisdiction in domestic relations matters, for the Court of Appeal found that the district court had none over counterclaims in tort for infliction of mental anguish and for alienation of a child's affection. Despite the fact that the claims bore the label "tort," the Fifth Circuit adopted a "broader inquiry into the nature of the claim, rather than a resolution of the issue by technical appellation. The general inquiry is whether hearing the claim will necessitate the Court's involvement in domestic issues, i.e., whether it will require inquiry into the marital or parent-child relationship." *Id.* at 565. *See also* Wright, Miller & Cooper, *Federal Practice and Procedure: jurisdiction* § 3609 ("Even in [domestic relations actions brought in tort], a federal court may well decline jurisdiction if the tortious conduct is part of an ongoing series of disputes centering around the marital relationship.")

Under the rubric of *Jagiella*, this Court has no subject matter jurisdiction over Mrs. Clements' claims. The tort that she alleges is domestic in nature and would require inquiry into the Clements' relationship which gave rise to the domestic dispute, and into the relationship of Christopher with his stepfather and with his mother. The Fifth Circuit has indicated that these subjects are outside the federal district court's province. In *Jagiella*, the Court of Appeals felt that the language of *Bacon v. Bacon*, 365 F.Supp. 1019, 1020 (D.Ore.1973) bore repeating. It bears repeating again:

> Stripped of its verbiage, this is no more—and no less—than a domestic relations case. While it may be true, as Plaintiff's counsel has urged, that there are instances where estranged parties may properly sue each other in federal

courts, this is not one … The language of the complaint shows this to be part of an ongoing series of disputes centering around the dissolved but still stormy relationship and the status of—and harm to—their children.

[I]f this case were allowed to be maintained, United States District Courts would be deluged with domestic relations cases, all containing initially colorable tort claims of "extreme and outrageous conduct resulting in severe emotional distress" where the parties have placed [a state border] between themselves in an attempt to escape each other.

For this and other policy reasons, a judicial exception to federal jurisdiction has been created with respect to intra-family feuds.

Accordingly, pursuant to Fed.R.Civ.P. 12(h)(3),

IT IS HEREBY ORDERED that this suit be and is DISMISSED, each party to bear its own costs.