**Jacqueline Suzanne Agathe JAGIELLA,**
**a/k/a Jacqueline Rigaux Jagiella,**
**Plaintiff-Appellee,**

v.

**Waclav James Constantine JAGIELLA,**
**a/k/a Waclav J. Jagiella,**
**Defendant-Appellant.**

No. 79–2963.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 11, 1981.

Rehearing and Rehearing En Banc
Denied July 29, 1981.

Waclav James Constantine Jagiella, pro se.

Barry B. McGough, Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, TJOFLAT and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

This domestic saga has now spanned three countries, ten years, and a myriad of motions, hearings, and orders. Upon this latest scene, staged in federal court, we attempt to draw the final curtain.

Briefly stated, the facts are as follows: Waclav and Jacqueline Jagiella were divorced pursuant to a Florida divorce decree on April 7, 1971. That judgment required appellant husband to pay appellee wife alimony and child support of $230 per week. Child support for the couple's five children was to be paid until each attained the age of twenty-one[1] and to be reduced proportionately at that time. A Florida court modified the original judgment on August 16, 1972, reducing alimony and child support to $125 per week and ordering that payments be made to the Clerk of the Circuit Court in Pinellas County, Florida. On July 10, 1973, a Florida court adjudged appellant $9,766.25 in arrears. After appellant, a United States citizen and now a Georgia resident, fell still further in arrears, appellee, a French citizen,[2] instituted this diversity action on September 9, 1976, seeking the entire amount in arrears, $29,-124.96.[3] On June 20, 1979,[4] the district court granted appellee's motion for summary judgment. Waclav Jagiella appeals, set-

---

1. Two children have since reached this age.

2. Appellant challenges this fact here. *See* discussion *infra*.

3. The district court found that the records of the Clerk of the Circuit Court of Pinellas County, Florida showed this amount to be due and owing. Appellant does not challenge this finding.

4. Condemning the "unnecessarily tortuous" path the case had taken before it, the court cited as reasons for the delay appellant's numerous "unorthodox motions," unsuccessful appeals and decision to proceed *pro se* and appellee's counsel's failure to supplement the record with required documentation.

ting forth fifteen grounds upon which he contends the district court erred. Finding no merit in any of these, we affirm.

Appellant's first challenges are jurisdictional. He argues that diversity of citizenship, as required by 28 U.S.C. § 1332, did not exist in that appellee, like appellant, was a resident of Georgia at the time of this suit, and that the amount in controversy was less than $10,000.[5] He also asserts that the court lacks subject matter jurisdiction over domestic matters.

■ Citing the fact that Jacqueline Jagiella gave a Georgia address in instituting an abandonment proceeding in a Georgia state court,[6] appellant claims that appellee is a Georgia resident like himself and that diversity of citizenship does not exist.[7] Appellant errs in pointing to appellee's residence, rather than citizenship. The United States Supreme Court has made clear that for purposes of diversity jurisdiction, the latter, not the former, controls. In *Breedlove v. Nicolet*, 7 Pet. 413, 431–32, 8 L.Ed. 731 (1833), responding to the allegation of Breedlove and Robeson, partners in a firm doing business in Louisiana and citizens of that state, that diversity jurisdiction did not obtain because plaintiffs below, although aliens, were also residents of Louisiana, Chief Justice Marshall stated:

If originally aliens, they did not cease to be so, nor lose their right to sue in the federal court, by a residence in Louisiana. Neither the constitution nor acts of congress require that aliens should reside

abroad, to entitle them to sue in the courts of the United States.

The same result was reached in *Nichols Lumber Co. v. Franson*, 203 U.S. 278, 27 S.Ct. 102, 51 L.Ed. 181 (1906) where both parties were residents of the state of Washington and plaintiffs below were citizens or subjects of Switzerland. Whether citizens or subjects of the foreign state, the court held, diversity of citizenship existed. Common residence did not alter that fact.[8] Here, the district court found that the evidence as to appellee's foreign citizenship was uncontroverted.[9] Appellee's and appellant's respective citizenships of France and Georgia therefore conveyed diversity jurisdiction.

■ Appellant's second argument is that diversity jurisdiction did not lie with the district court because the amount in controversy was less than $10,000. Dr. Jagiella's reasoning in this regard is that only $9,766.25 in arrears had been reduced to final judgment by the Florida court and that, consequently, only this amount could be the subject of the instant action. Again, we disagree. Georgia law governs a question regarding enforcement of a sister state judgment. In *Napier v. Napier*, 119 Ga. App. 143, 166 S.E.2d 583 (1969), the Georgia Court of Appeals held:

A decree for alimony in future monthly installments granted in a sister State is enforceable in this State as to all sums due and unpaid thereunder upon which recovery is sought, and does not lack the quality of finality because not first reduced to a judgment in the foreign state

---

**5.** 28 U.S.C. § 1332(a) provides:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

. . . . .

(2) citizens of a State, and foreign states or citizens or subjects thereof; and . . .

**6.** The abandonment proceeding was instituted on September 3, 1976; appellant emphasizes that the instant case was commenced September 9, 1976.

**7.** The district court found that at the time appellee instituted the action she was living in France, although it is unclear from the record the length of time she had resided there or the duration of her visit to Georgia. The court did not make a finding as to legal residence. That determination, however, is irrelevant. *See infra.*

**8.** *See also Combee v. Shell Oil Co.*, 615 F.2d 698 (5th Cir. 1980) (domicile of parties, not residence, is key); *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974) (citizenship and domicile equivalent).

**9.** Appellant neither admitted nor denied appellee's French citizenship in his answer.

stating the total accrued amount sought to be recovered.[10]

166 S.E.2d at 583. *See also McLendon v. McLendon*, 66 Ga.App. 156, 17 S.E.2d 252 (1941). Since the records of the Florida Circuit Court showed the total arrearage to be $29,124.96, appellee satisfied the requisite jurisdictional amount.

 Appellee next challenges the district court's subject matter jurisdiction on the ground that domestic relations are beyond the purview of the federal courts. As a general statement, this assertion is true.[11] In *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978), the leading Fifth Circuit case in this area, we acknowledged this fact and gave as reasons for the federal judiciary's traditional refusal to exercise diversity jurisdiction in domestic relations cases: "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." Nonetheless, we held that this traditional abstention did not prevent our exercising jurisdiction in a suit between former spouses for damages

caused by the breach of a voluntary separation agreement, involving "little more than a private contract to pay money."[12] 566 F.2d at 487. Other courts have proceeded likewise. Thus, in an opinion by Judge Friendly, the Second Circuit held that diversity jurisdiction was not barred in an action by a wife's New York counsel against her husband, a citizen of Connecticut, then Florida, for legal services counsel had rendered to the wife in connection with a number of suits growing out of the couple's separation. *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509 (2d Cir. 1973). The District Court for the Southern District of New York, on facts closely paralleling those here—an ex-wife's suit to recover $24,000 allegedly due for breach of a predivorce property settlement—held that as the action was essentially one for breach of contract diversity jurisdiction existed. *Graning v. Graning*, 411 F.Supp. 1028 (S.D.N.Y.1976). Since the arrearages here in question were calculable solely from the records of the Clerk of the Florida Circuit Court and involved no litigation of questions regarding the parties' marital relationship, we conclude that the district court properly exercised jurisdiction.

---

**10.** Georgia law distinguishes between an action to enforce an award for support rendered in connection with a divorce decree, although such award is subject to modification, and an action to enforce such award where it is not rendered in connection with a divorce decree and is made subject to "further order of the court," and will not enforce the latter judgment of a sister state. *Ryle v. Ryle*, 130 Ga.App. 680, 204 S.E.2d 339 (1974). Since the award in question was made in conjunction with a divorce decree, *Ryle* does not bar enforcement here.

**11.** The majority of courts, including the Fifth Circuit, *Crouch v. Crouch*, 566 F.2d 486 (5th Cir. 1978) (discussed *infra*), have reached this result on the ground that federal courts should abstain from exercising jurisdiction in such cases. However, well-respected authority for the proposition that federal courts lack jurisdiction over domestic relations, i. e., that the diversity statute, 28 U.S.C. § 1332, did not confer such jurisdiction, also exists. For an extensive discussion of this issue, *see Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509 (2d Cir. 1973) (Friendly, J.); *Spindel v. Spindel*, 283 F.Supp. 797 (E.D.N.Y.1968)

(Weinstein, J.); P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 1189–92 (2d ed. 1973).

In either case, the oft-cited and widely quoted decision, *In Re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States"), does not establish this principle, as *Burrus* dealt only with an application for habeas; diversity jurisdiction was not in question.

**12.** Although the *Crouch* court noted that the suit before it involved "no questions of custody or parental rights," 566 F.2d at 487, the fact that such questions have been raised in the instant suit does not, in our judgment, render improper the district court's exercise of jurisdiction over appellee's claim for arrearages. By restricting jurisdiction to that claim and refusing to hear appellant's counterclaim, discussed *infra*, it avoided those reasons for abstention cited in *Crouch*.

■ Appellant's next contention, that the district court improperly dismissed his counterclaim, touches upon similar issues. Here, appellant sought 1) modification of the divorce decree by reducing appellant's child support payments and increasing his visitation rights and 2) damages for the alienation of his children's affection and resultant infliction of mental anguish by appellee.[13] The district court refused to exercise jurisdiction. This decision was correct with respect to appellant's request for modification of the divorce decree.[14] Although the court's ruling with respect to appellant's second request for relief presents a closer question, we conclude that it acted properly in refusing to exercise jurisdiction.

■ Earlier courts have held that suits alleging alienation of a spouse's affections were cognizable in a federal court. *Wawrzin v. Rosenberg*, 12 F.Supp. 548 (E.D.N.Y.1935); *Gordon v. Parker*, 83 F.Supp. 40 (D.Mass.1949). The rationale, though unstated, presumably was that such suits were actions in tort rather than traditional matrimonial claims for divorce, alimony or custody. Since tort and contract actions are technically outside the field of domestic relations, the courts could properly exercise jurisdiction in such cases. However, recent authority, while sparse, seems to favor a broader inquiry into the nature of the claim rather than resolution of the issue by technical appellation. The general inquiry is whether hearing the claim will necessitate the court's involvement in domestic issues, i. e., whether it will require inquiry into the marital or parent-child relationship. Thus, in *Solomon v. Solomon*, 516 F.2d 1018 (3rd Cir. 1975), the court affirmed the lower court's ruling that appellant divorced wife's suit for nonsupport based in contract could not be maintained in federal court where, *inter alia*, a custody question was involved. In *Bacon v. Bacon*, 365 F.Supp. 1019 (D.Ore. 1973), faced with a case similar to the instant one, a suit between ex-spouses alleging the intentional infliction of mental an-

guish, the court refused to exercise jurisdiction. Its words bear repeating:

> Stripped of its verbiage, this is no more—and no less—than a domestic relations case. While it may be true, as Plaintiff's counsel has urged, that there are instances where estranged parties may properly sue each other in federal courts, this is not one.... The language of the complaint shows this to be part of an ongoing series of disputes centering around the dissolved but still stormy relationship and the status of—and harm to—their children.
>
> ... [I]f this case were allowed to be maintained, United States District Courts would be deluged with domestic relations cases, all containing initially colorable tort claims of "extreme and outrageous conduct resulting in severe emotional distress" where the parties have placed [a state border] between themselves in an attempt to escape each other.
>
> For this and other policy reasons, a judicial exception to federal jurisdiction has been created with respect to intrafamily feuds.

365 F.Supp. at 1020. *See also* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3609 ("Even in [domestic relations actions brought in tort], a federal court may well decline jurisdiction if the tortious conduct is part of an ongoing series of disputes centering around the marital relationship"). As in *Bacon*, here appellant's allegations regarding the alienation of his children's affections grow out of "the dissolved but still stormy relationship" of the parties. The district court therefore acted correctly in dismissing the counterclaim.

■ In addition to his jurisdictional challenges, appellant contends that the district court erred in failing to hold that a 1974 Canadian judgment under the New Brunswick Deserted Wives and Children Mainte-

---

**13.** The second prayer was a part of appellant's amended cross-complaint.

**14.** "[T]he competence of state courts in settling family disputes," *Crouch* at 487, is the factor that strongly militates in favor of this conclusion.

nance Act[15] modified the Florida award. Again, appellant is mistaken. The Canadian court[16] specifically held that appellee was not a deserted wife under the Act and ordered only that appellant pay child support for his three minor children then residing in the province.[17] It did not purport to modify the Florida award in any way, only to provide for the parties' children then domiciled in its jurisdiction.

Analogy to state uniform reciprocal enforcement of support acts buttresses this conclusion. Courts have held that subsequent actions for child support under such acts do not affect the enforceability of the alimony provisions of an earlier sister state judgment. *Helgesson v. Helgesson*, 196 F.Supp. 42 (D.Mass.1961). The *Helgesson* court stated: "The remedies provided by [the Massachusetts uniform reciprocal enforcement of support act[18]] are in addition to and not in substitution for any other remedy." 196 F.Supp. at 46. *See also United States v. Stephens*, 472 F.Supp. 14 (E.D.Tenn.1979) (Tennessee Reciprocal Enforcement Statute[19] does not empower Tennessee court to render void the valid alimony and child support orders of a foreign jurisdiction).

Appellant lists numerous other grounds for reversal,[20] all of which we deem frivolous or patently without merit.

Accordingly, the judgment is AFFIRMED.

---

**15.** 61 R.S.N.B. 1952.

**16.** County Court of New Brunswick.

**17.** The amount of child support ordered was in fact greater than that provided by the modified Florida award.

**18.** Mass.G.L. c. 273A.

**19.** *Tenn.Code Ann.* §§ 36–901 *et seq.*

**20.** For example, Dr. Jagiella claims that the district court judge should have recused himself because of bias. The only evidence offered in support of this contention was appellant's daughter's statement that the judge "spoke loud (sic) to my daddy."