Eleanor Cook GOINS,
Plaintiff-Appellant,

v.

Richard Allen GOINS, et al.,
Defendants-Appellees.

No. 84–4801.

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1985.

Nancy J. Beck, Jackson, Miss., for plaintiff-appellant.

William F. Wall, Fairfax, Va., for Crawford & Crawford.

Gerald Hosemann, Vicksburg, Miss., for Goins.

Tim Hancock, Jackson, Miss., for Harold Cain, Barbara Cain, Susie Can & Nocal Frisbie.

Jessie Armstrong pro se.

Before CHARLES CLARK, Chief Judge, HOMER THORNBERRY, and EDITH H. JONES, Circuit Judges.

## OPINION

CLARK, Chief Judge:

Eleanor Goins sued her former husband and seventeen of his relatives and associates in federal district court for conspiring to and wrongfully taking and withholding their child from her lawful custody. She sought damages and modification of a state court custody order. The district judge determined that this case fell within the domestic relations exception to federal diversity jurisdiction and dismissed it for lack of subject matter jurisdiction. We affirm.

### I

Eleanor Goins left her husband, Richard Goins, in Louisiana and moved with her minor child, Aron Benjamin Goins, to Mississippi in late 1982. Eleanor filed a child custody action in the Warren County Chancery Court. She did not request a divorce at this time. The Chancery Court awarded her custody of the child on August 30, 1983.

On September 21, 1983, Richard failed to return the child to Eleanor after a visit. He took the child and moved to Corpus Christi, Texas. Eleanor filed an action for divorce in Warren County Chancery Court in November, 1983. Richard did not answer or appear to defend himself in that action, and the court decreed a divorce on January 4, 1984.

On January 30, 1984, the F.B.I. arrested Richard, located the child, and returned the child to Eleanor. Eleanor filed a complaint based on diversity of citizenship in the United States District Court for the Western District of Mississippi on that same day. The complaint named Richard and seventeen of his relatives and associates, who resided in Texas, Louisiana, Virginia, and England, as defendants. Eleanor alleged that the defendants conspired to remove and withhold the child from her lawful custody. She sought the return of the child and actual and punitive damages for the torts of unlawfully taking or withholding a minor child from the custodial parent, intentional infliction of mental distress, and civil conspiracy. She also requested modification of the Warren County Chancery Court Child Custody Judgment to terminate Richard's visitation and parental rights to the child or to require him to post a surety bond whenever he visited the child. In February, 1984, Eleanor filed an action seeking the same relief in the Chancery Court of Warren County.

The federal district court judge dismissed the diversity case for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). The district judge found that the primary question in the case concerned parental and custodial rights, in which the state court had a strong interest and the greatest competence for adjudicating. The judge relied on the well-established doctrine that allows federal courts to abstain from deciding domestic relations questions even where diversity of citizenship exists.

## II

■ Federal courts traditionally decline to hear cases involving the subject matter of "domestic relations" despite the existence of diversity of citizenship. *Ex Parte Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 1500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."); *Franks v. Smith*, 717 F.2d 183, 185 (5th Cir.1983) ("issues of domestic relations are the province of state courts") (citing *Burrus* ); *Bennett v. Bennett*, 682 F.2d 1039, 1042 (D.C.Cir.1982) ("a federal court will not ... grant a divorce, determine alimony or support obligations, or resolve parental conflicts over custody of their children"). A federal court may abstain from hearing such a case even if the case also involves ordinary tort or contract claims. The inquiry that determines whether the court may abstain is "whether hearing the [tort or contract] claim will necessitate the court's involvement in domestic issues, i.e., whether it will require inquiry into the marital or parent-child relationship." *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir.1981).

In *Crouch v. Crouch*, a former wife sued her former husband for breach of a voluntary separation agreement. 566 F.2d 486, 487 (5th Cir.1978). The Fifth Circuit Court of Appeals affirmed the federal district court's exercise of jurisdiction because the case presented "no questions of custody or parental rights, no pending state court action or agreement to litigate in state court, ... no threat that the former spouses will seek to play one court system off against the other," and no "strong state interest in the adjudication of this suit or any special competence on the part of the state courts." *Id.* at 487–88 (citations omitted). The case "involve[d] little more than a private contract to pay money between persons long since divorced, whose children [were] well into adulthood." *Id.* at 487.

Using similar reasoning, this court held in *Jagiella v. Jagiella*, that a federal district court properly exercised jurisdiction over a claim for alimony and child support "arrearages ... calculable solely from the records of the Clerk ... [which] involved no litigation of questions regarding the parties' marital relationship," and properly refused to exercise jurisdiction over counterclaims for modification of visitation rights and support payments and damages for mental distress due to alienation of the children's affection. 647 F.2d 564–65. Advocating a "[broad] inquiry into the nature of the claim," the court determined that these counterclaims represented "a domestic relations case.... The language of the complaint show[ed] this to be part of an ongoing series of disputes centering around the dissolved but still stormy relationship and the status of—and harm to—their children." *Id.* at 565 (quoting *Bacon v. Bacon*, 365 F.Supp. 1019, 1020 (D.Or. 1973)).

## III

■ Appellant contends that the district court's dismissal was improper because her suit is a tort action for money damages, unrelated to any domestic issues. She relies primarily on the case of *Fenslage v. Dawkins*, 629 F.2d 1107 (5th Cir.1980). The *Fenslage* court affirmed a district court's judgments for a plaintiff who sued her ex-husband and his relatives for conspiring to take and conceal her children in violation of a Texas state court custody order and for intentional infliction of mental anguish. *Id.* at 1108–09. The *Fenslage* plaintiff did not, however, seek modification of the custody order, and the defendants did not raise the issue of jurisdiction. The only determination for the federal court was whether the defendant violated the custody order and the damages resulting from that violation. *See Lloyd v. Loeffler*, 694 F.2d 489, 493 (7th Cir.1982) (resolution of this issue as opposed to who should have custody of the child does not require the special expertise of state courts). The relief sought and the issues raised in the case at bar significantly distinguish it from *Fenslage*.

Appellant also relies on the Restatement (Second) of Torts § 700 (1977) and a number of federal appellate and district court opinions for the proposition that a cause of action for tortious interference with the custody of a child is cognizable in federal court. Some of these cases are inapplicable because they did not involve any determination of custodial rights. *See Lloyd,* 694 F.2d at 490–93 (seeking damages for tortious interference with the custody of a child and civil conspiracy); *Wasserman v. Wasserman,* 671 F.2d 832 (4th Cir.) (seeking damages for child enticement, intentional infliction of emotional distress, and civil conspiracy), *cert. denied,* 459 U.S. 1014, 103 S.Ct. 372, 74 L.Ed.2d 507 (1982); *Cole v. Cole,* 633 F.2d 1083 (4th Cir.1980) (seeking damages for malicious prosecution, abuse of process, arson, conspiracy, and conversion); *Kajtazi v. Kajtazi,* 488 F.Supp. 15 (E.D.N.Y.1978) (seeking damages for false imprisonment, abduction, intentional infliction of mental suffering, and conspiracy). Others did require a determination of custodial rights in addition to tort claims. The courts in these actions either refused to rule on the claims involving custody or stayed the federal court proceedings until the custody issue was resolved in state court. *See Bennett v. Bennett,* 682 F.2d 1039 (D.C.Cir.1982) (holding district court had jurisdiction over claim for monetary relief but not over request to enjoin defendant from further interference with custody of children); *Acord v. Parsons,* 551 F.Supp. 115 (W.D.Va.1982) (suspending federal suit seeking money damages for child enticement, intentional infliction of emotional distress, and civil conspiracy until custody proceedings in state court were resolved); *see also Hinton v. Hinton,* 436 F.2d 211 (D.C.Cir.1970) (holding that plaintiffs had stated a claim upon which relief could be granted for harboring disobedient child, conspiracy, and injunction, but not addressing the jurisdiction issue), *aff'd,* 492 F.2d 669 (D.C.Cir.1974).

In only one of these cases did a federal district court exercise its jurisdiction to adjudicate a question concerning child custody rights. *See Abdul-Rahman Omar*

*Adra v. Clift,* 195 F.Supp. 857 (D.Md.1961). The facts and policy considerations in that case are significantly different from those in the case at bar. In *Abdul-Rahman,* an alien plaintiff sought custody of his minor daughter in accordance with his rights under Lebanese and Moslem law. *Id.* at 859. The district court exercised jurisdiction despite the domestic relations abstention doctrine because of the importance of foreign relations, the expertise of federal courts in dealing with questions of nationality and entry into the United States, and because the case fell under Congress' express grant of original jurisdiction of tort actions brought by aliens to the federal district courts. *Id.* at 862–63, 865; *see* 28 U.S.C. § 1350.

Although appellant now claims that she seeks only damages in federal court against appellee for his tortious actions, the complaint on which the district court ruled contains a specific request for modification of the state court custody judgment. An action in which she seeks similar relief is currently pending in Warren County Chancery Court, the court that issued the original custody judgment and divorce decree. The state court has a strong interest in and the expertise to decide domestic issues which federal courts lack. As appellant concedes, the state court also has the power to award damages for the abduction of a child by the noncustodial parent in violation of a custody order. *See* Miss. Code Ann. § 9–5–87 ("The chancery court ... shall have power to punish any person for breach of injunction, or any other order, decree, or process of the court, by fine or imprisonment, or both....").

Unlike the claims allowed in *Jagiella* and *Crouch,* Eleanor's damage claim involves more than the enforcement a private contract to pay money or arrearages calculable according to state court records. It is similar to the *Jagiella* counterclaims for modification of visitation rights and mental distress damages which the district court refused to hear because they originated in ongoing marital and custodial disputes. It requires the involvement of a federal court

in domestic issues which the domestic relations exception to federal diversity jurisdiction precludes.

In light of these facts and their correspondence with the dispositive factors articulated in *Crouch*, we hold that the federal forum properly abstained from entertaining any of the claims advanced by Eleanor. All her claims were either directly covered by the ongoing domestic relations controversy now pending in the Chancery Court of Warren County, Mississippi, or so immeshed in that controversy as to be within the bounds of the domestic relations exception to the exercise of the federal district court's diversity jurisdiction. Equity and complete justice indicate that all these claims should be adjudicated in the state court system rather than severed and decided by separate courts in a piecemeal fashion. Equally important, this procedure will eliminate the hazard of interference between the state and federal court systems, and any possibility of contradictory or overlapping rulings.

Appellant would not be prejudiced by any state statute of limitations even if she should be required to refile her action in state court. Miss.Code Ann. § 15–1–69 provides that a plaintiff whose action is commenced within the appropriate limitations period, but which is defeated "for any matter of form," may commence a new cause of action within one year of the determination of the original action. A dismissal for lack of subject matter jurisdiction is a "matter of form" which this statute encompasses. *Ryan v. Wardlaw*, 382 So.2d 1078 (Miss.1980); *Frederick Smith Enterprise Co. v. Lucas*, 204 Miss. 43, 36 So.2d 812 (1948).

Because we find that the district court properly abstained from exercising jurisdiction over this lawsuit, we need not consider the other issues which the parties address—whether diversity of citizenship existed and whether service of process was sufficient.

The judgment appealed from is

AFFIRMED.