Robert RYKERS, individually and on Behalf of his acknowledged, natural daughter, Tasha Rykers, and Jaro Rykers, Plaintiffs–Appellants,

v.

Susan ALFORD, a/k/a Christine Anderson Pollock, Slidell Police Department, Maurice E. Fuqua, Individually, and in His Capacity as a Slidell Police Officer, John Volz, Individually and as United States Attorney, Three Unknown Assistant United States Attorneys, and United States of America, Defendants-Appellees.

No. 86–3732.

United States Court of Appeals,
Fifth Circuit.

Nov. 25, 1987.

David J. Gorewitz, Jerald L. Album, New Orleans, La., for Slidell, Slidell Police/Det. Fuqua.

Henry Hoppe, III, Slidell, La., for Rykers, et al.

William F. Baity, Asst. U.S. Atty., John P. Volz, New Orleans, La., for John Volz, U.S. Atty. & Federal Def.

John F. Greene, New Orleans, La., for Susan Alford.

Before GOLDBERG, JOHNSON, and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

A father sued the mother of his child, a police officer, the United States, and several federal officials for damages connected with the father's arrest for allegedly kidnapping his child. The district court dismissed all the claims. For the reasons discussed below, we affirm.

## I. BACKGROUND

Susan Alford met Robert Rykers in Australia in 1971 and allegedly became Rykers' common-law wife. In 1975, they had a daughter and named her Tasha Rykers. Robert Rykers allegedly was acknowledged as the child's father on the birth certificate. In 1977, Alford took her daughter and left Australia without informing Rykers of their destination. Rykers claims that he spent seven years sailing around the world in his yacht with his son Jaro, seeking Tasha. In 1984, Rykers learned that Alford and her daughter (now called Aimee Anderson) were living in Slidell, Louisiana, with Alford's husband, Barry Pollock. Apparently, no court had as yet issued a decree fixing Aimee's custody.

On May 24, 1984, Alford agreed to allow Aimee to visit Rykers for the weekend. That night Rykers and Jaro set sail for Florida with Aimee. Rykers left behind a letter for Alford saying that he was "taking Tasha for a sail and will give you a phone call in 2–3 weeks time." Record at 102. Alford contacted the Slidell Police, and Officer Maurice Fuqua swore out an affidavit based on Alford's statement. A Slidell city court judge issued an arrest warrant charging Rykers with simple kidnapping under La.Rev.Stat.Ann. § 14:45 (West 1986). The Louisiana district attorney notified the United States Attorney for the Eastern District of Louisiana, who filed

a complaint and obtained an arrest warrant against Rykers under 18 U.S.C. § 1073 (interstate flight to avoid prosecution). On June 3, 1984, the FBI arrested Rykers in Key West, Florida. Rykers was extradited to Louisiana and charged with simple kidnapping in Louisiana state court. At a preliminary hearing, a state court judge found probable cause for the charge, but the federal and state charges were dismissed in July and August 1984.

In June 1985, Rykers, on behalf of himself, Jaro and Aimee, filed the instant suit in federal district court against Alford, Alford's attorney C. Michael Winters, Officer Fuqua, the Slidell Police Department, the City of Slidell, United States Attorney John Volz and three Assistant United States Attorneys, the United States, and three unknown FBI agents. The complaint included claims under section 1983 and *Bivens*, as well as pendent state law claims against Alford. The district court granted summary judgment for all the defendants. On appeal, Rykers has abandoned the claims that he brought in the names of Jaro and Tasha–Aimee, as well as his claims against the City of Slidell and Alford's attorney, Winters.

## II. DISCUSSION

### A. *The United States*

■ Rykers sued the United States for the federal agents' actions in arresting and holding him. The United States may be sued only within the exception to sovereign immunity provided by the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 1346, 2671–2680. The FTCA requires that a claimant first bring an administrative claim and allow the offending agency at least six months to act on the claim. 28 U.S.C. § 2675(a). In his brief, Rykers stated that he filed an administrative claim, but that the claim was "ignored." Appellant's Brief, at 11. The record shows that no proof of the filing of an administrative claim was presented to the district court, let alone proof that the claim was acted on or that six months had passed. The district court thus did not err in dismissing Rykers' suit against the United States.

### B. *The United States Attorney and Assistant United States Attorneys*

Rykers contends that the information the federal prosecutors received from the Louisiana authorities made it obvious that the elements of parental kidnapping were not present. *See State v. Elliott*, 171 La. 306, 131 So. 28 (1930), more fully discussed below. As a result, when the federal prosecutors authorized a warrant for Rykers' arrest on charges of interstate flight to avoid prosecution, the prosecutors knowingly violated Rykers' right not to be arrested without probable cause.

■ Prosecutors enjoy absolute immunity for acts taken to initiate prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Prosecutors may appeal to this immunity in the face of allegations of the knowing use of perjured testimony and the withholding of exculpatory information. *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir.1979). Absolute immunity shelters prosecutors even when they act "maliciously, wantonly or negligently." *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir.1985).

■ A prosecutor does not have absolute immunity for administrative or investigatory functions that are not an integral part of the judicial process. *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995; *Marrero v. City of Hialeah*, 625 F.2d 499, 506–11 (5th Cir.1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). In the instant case, the federal prosecutors received information from Louisiana authorities alleging a violation of Louisiana criminal law; translated that information into the federal charge of interstate flight to avoid prosecution under 18 U.S.C. § 1073; and obtained a federal arrest warrant. A clearer case of initiating a prosecution can scarcely be imagined. The fact that charges against Rykers were later dropped has no bearing on the absolute immunity of the United States attorneys and their assistants. The district court did not err in dismissing the charges.

### C. *The FBI Agents*

■ Rykers argues that the FBI agents who arrested him in Florida, like the United States Attorney, should have known that, as Aimee's father, he could not be guilty of kidnapping her. Federal law enforcement officers are absolutely immune from common-law suit for actions taken within their authority. *Barr v. Mateo*, 360 U.S. 564, 571–75, 79 S.Ct. 1335, 1339–42, 3 L.Ed.2d 1434 (1959). However, the officers may be liable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ This Court has repeatedly held that a claim for false arrest or analogous torts is subject to dismissal for failure to state a claim when the arrest is made under a properly issued, facially valid warrant. *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir.), *cert. denied*, 459 U.S. 1005, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982); *Simon v. United States*, 644 F.2d 490, 496 (5th Cir.1981). The district court found, and Rykers does not dispute, that the FBI agents acted on a facially valid warrant. Thus, the district court did not err in dismissing the claim against the agents.

### D. *Officer Maurice Fuqua*

■ Officer Fuqua is protected by qualified immunity for his official acts, so long as he "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is an affirmative defense that must be established by the official. *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736. However, the Supreme Court has characterized the question of whether the law was clearly established at the time of an official's conduct as an appropriate question for summary judgment. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

Rykers argues that Officer Fuqua violated the Constitution by submitting an affidavit to obtain an arrest warrant for kidnapping when Officer Fuqua knew that Rykers, as Aimee's father, could not kidnap her absent a custody decree. The Louisiana kidnapping statute defines parental kidnapping as:

(4) The intentional taking, enticing or decoying away and removing from the state, by any parent of his or her child, from the custody of any person to whom custody has been awarded by any court of competent jurisdiction of any state, without the consent of the legal custodian, with intent to defeat the jurisdiction of the said court over the custody of the child.

La.Rev.Stat.Ann. 14:45(A)(4). The Louisiana courts have interpreted this statute as barring prosecution of a father who took his child before a custody decree was handed down. *State v. Elliott*, 131 So. 28. Other states have similar doctrines. *See generally* Annotation, *Kidnapping or related offense by taking or removing of child by or under authority of parent or one in loco parentis*, 20 ALR 4th 823 (1983). Fuqua, as an officer charged with enforcing Louisiana law, can be presumed to know that law. Moreover, because Officer Fuqua's affidavit forms the first link of the paper chain leading to Rykers' arrest, Fuqua, unlike the other government defendants, cannot appeal to the facial validity of a previous document. Nor can Officer Fuqua appeal to the doctrine that an affiant who lays all the facts out before a neutral magistrate is insulated from liability by the magistrate's independent decision to issue a warrant. *Gonzales*, 670 F.2d at 526. In the instant case, the key fact that Alford had obtained no custody decree was not included in Officer Fuqua's affidavit.

■ However, there are several difficulties in the law and facts as they appeared to Officer Fuqua on the day he signed the affidavit. These difficulties lead us to agree with the district court that Rykers' rights were not "clearly established" on that date. First, the Louisiana Supreme Court case on which Rykers relies, *Elliott*, provides that a parent can kidnap his own child if a custody decree exists *or* if a petition for separation or divorce is pending. *Elliott*, 131 So. at 30 (remanding to determine whether a petition was pending). If the Louisiana courts

themselves read the kidnapping statute nonliterally in the sense that a custody decree is not absolutely required, then Officer Fuqua can be forgiven for doing the same. Alford's motion for summary judgment, never contradicted on this point by Rykers, stated that she had legal custody over Aimee under the laws of Australia. Record at 65. If Alford made a similar statement to Officer Fuqua, Fuqua could reasonably believe that Alford's rights to Aimee sufficed to trigger the statute.

Second, the kidnapping statute defines five other types of "simple kidnapping." At least one of these types applies, by its literal terms, to Rykers' conduct under the facts known to Officer Fuqua:

> (1) The intentional and forcible seizing and carrying of any person from one place to another without his consent ...

La.Rev.Stat.Ann. 14:45(A)(1). Rykers does not cite, and the Court's research does not reveal, any Louisiana case holding clearly that a parent innocent of parental kidnapping under subsection (4) cannot be charged with kidnapping under subsection (1). Again, the law is not "clearly established." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

Finally, the facts of the case were not clear on the day of the affidavit. The only evidence presented to the district court on what Alford told Officer Fuqua is the content of Fuqua's affidavit itself.[1] The affidavit refers to Aimee as the "illegitimate daughter" of Rykers. Record at 103. The affidavit also describes Alford as "the legimate [*sic*] mother," and states that Aimee's name was "changed in court" from "Tasha Ryker" to "Aimee Anderson." *Id.* Officer Fuqua states that the affidavit re-

flects the information given by Alford to Fuqua at the time, and Rykers has presented no evidence to the contrary. If so, then Officer Fuqua's characterization of Alford as "legitimate" and of Rykers as "illegitimate," coupled with the references to a court proceeding, indicate that Fuqua may have assumed that Alford had sufficient custody rights to Aimee to satisfy the statute. Given the emergency situation that Rykers himself created by taking Aimee on board a yacht capable of leaving the country at any time, Officer Fuqua had no further time to investigate. The existence of extraordinary circumstances, such as an emergency precluding factual investigation, can be taken into account in deciding a claim of qualified immunity under *Harlow*. *Trejo v. Perez*, 693 F.2d 482, 485 (5th Cir. 1982).

In sum, because of ambiguities in Louisiana kidnapping law and gaps in the available facts, we conclude that the district court did not err in its determination of qualified immunity for Officer Fuqua.

### E. Susan Alford

Rykers brought state law claims against Susan Alford for deprivation of parental rights, the seven-year search for Aimee, and malicious prosecution. The district court dismissed these claims, citing the "domestic relations" exception to federal jurisdiction.[2] Under this exception, the federal courts have traditionally refused to take cases involving marital status or child custody. The courts have reasoned that (1) the state courts have greater expertise and interest in domestic matters; (2) such disputes often require ongoing supervision, a task for which the federal courts are not

---

1. At oral argument, Rykers' counsel stated that Alford had confessed, in a deposition, that she told Officer Fuqua that she did not have a custody decree for Aimee. We have searched the record in vain for this deposition. Rykers does not complain of any refusal by the district court to admit such evidence, if it exists. We, therefore, cannot take it into account.

2. Rykers' amended complaint asserts jurisdiction under "28, United States Code, Section 1311," a nonexistent section. Record at 219. If Rykers meant 28 U.S.C. § 1331, then his state claims were pendent to his federal question civil

rights claims. Apparently, Rykers could also have brought his state claims under diversity jurisdiction. 28 U.S.C. § 1332. We review the dismissal of pendent state claims using an abuse of discretion standard. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Corwin v. Marney, Orton Investments*, 788 F.2d 1063, 1069 (5th Cir.1986). By contrast, we review a denial of diversity jurisdiction de novo. Under either standard, as the succeeding discussion will show, the district court did not err.

suited; (3) piecemeal adjudication of such disputes increases the chance of different court systems handing down incompatible decrees; and (4) such cases serve no particular federal interest, while crowding the federal court docket. *See, e.g., Jagiella v. Jagiella*, 647 F.2d 561 (5th Cir.1981); 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3609 (1984).

 However, the courts have declared that the domestic relations exception is to be interpreted narrowly and that a case should not be dismissed merely because the parties are from the same family and a domestic dispute forms part of the context of the litigation. *McIntyre v. McIntyre*, 771 F.2d 1316, 1319 (9th Cir. 1985); *Franks v. Smith*, 717 F.2d 183, 185 (5th Cir.1983); *Bennett v. Bennett*, 682 F.2d 1039, 1042 (D.C.Cir.1982); *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir.1980). The decisive factor is not the formal label attached to the claim (tort, contract, etc.), but the type of determination that the federal court must make in order to resolve the case. If the federal court must determine which parent should receive custody, what rights the noncustodial parent should have, how much child support should be paid and under what conditions, or whether a previous court's determination on these matters should be modified, then the court should dismiss the case. On the other hand, if the court need only decide whether an already-set custody or child support award has been complied with, or whether the parties have committed acts that would be actionable even if everyone involved was unrelated, then the federal courts should retain the case.

For example, this Circuit and other circuits have approved of dismissal of a claim for modification of a state child custody decree. (*Goins v. Goins*, 777 F.2d 1059 (5th Cir.1985); *Jagiella*, 647 F.2d at 565); or for alienation of a child's affections (*Jagiella*, 647 F.2d at 565). The courts have also refused an injunction setting future custody and visitation rights (*Bennett*, 682 F.2d at 1042–43). The courts have *disapproved* of dismissal of a fourth amendment claim alleging that one parent induced a sheriff to search the other parent's house (*Franks*, 717 F.2d at 185–86). Parents have been allowed to sue in federal court for overdue *past* child support payments (*Jagiella*, 647 F.2d at 564); and for past violations of an established custody or visitation order (*McIntyre*, 771 F.2d at 1319); *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir.1985); *Lloyd v. Loeffler*, 694 F.2d 489, 491 (7th Cir.1982); *Bennett*, 682 F.2d at 1042). This Court has allowed a wife to sue her former husband in federal court for a fixed sum past due under a divorce decree. *Erspan v. Badgett*, 647 F.2d 550, 553 n. 1 (5th Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). One spouse has been allowed to sue another for arson, conversion, and malicious prosecution involving crimes unrelated to the marriage. *Cole*, 633 F.2d at 1088–89.

 In the instant case, Rykers' claims, while framed in terms of tort, cannot be resolved without determining Rykers' and Alford's respective rights to custody of Aimee. If Alford had the right to remove Aimee from Australia without informing Rykers of their whereabouts, then Alford would probably not be liable for deprivation of parental rights or the costs of Rykers' seven-year search. Our analysis of Rykers' claim against Officer Fuqua reveals that the claim of malicious prosecution also requires determination of the extent of Rykers' and Alford's custody rights as of May 1984, as well as the extent to which Louisiana would recognize any rights granted by Australian law. Moreover, a Louisiana court has since awarded custody to Alford. In determining present custody rights to Aimee, the Louisiana court may have made some predicate determinations concerning past rights that could have conflicted with determinations the federal district court would have been forced to make. In short, all of the policy considerations mandating domestic relations dismissal were present in the instant case.

## III. CONCLUSION

The district court did not err in dismissing Rykers' claim against the United States

for failure to first bring an administrative claim. The federal attorneys are protected by absolute prosecutorial immunity, and the FBI agents by their reliance on a facially valid warrant. Officer Fuqua's affidavit did not violate Rykers' clearly established rights. Thus, Officer Fuqua is protected by qualified immunity. Finally, Rykers' claims against Alford were properly dismissed under the domestic relations exception to federal jurisdiction. The district court's judgment is, therefore,

AFFIRMED.