George C. THOMPSON

v.

Marjory Ann SUNDHOLM, et al.

Civ. A. No. H–88–1648.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 1, 1989.

**148**

Rodney Jack Reynolds, Houston, Tex., for plaintiff.

Brenda D. Keen, Wallis & Keen, P.C., Houston, Tex., for Marjory Ann Sundholm, John Edward Sundholm and Lenore Sundholm.

Norma S. Harrell, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for the District Court Div. of Onslow County, N.C.

## MEMORANDUM AND ORDER

DeANDA, Chief Judge.

Pending before the Court are Marjory Ann Sundholm's, John Edward Sundholm's, Lenore Sundholm's, and the District Court of Onslow County, North Carolina's motions to dismiss for lack of subject matter jurisdiction and motions for Rule 11 Sanctions. Also pending are Plaintiff George C. Thompson's motion for leave to file an amended complaint and motion for rehearing.

On May 24, 1984, Marjory Ann Sundholm initiated a suit against Plaintiff in the Onslow County District Court to determine the paternity of John Wainwright Thompson, a male child born November 27, 1983. By a judgment entered February 28, 1985, the Onslow County District Court declared Plaintiff to be the biological father of the child, awarded Marjory Ann Sundholm custody of the child, and denied Plaintiff visitation privileges.

Shortly after obtaining custody of her child pursuant to the judgment of the Onslow County District Court, Marjory Ann Sundholm came with her child to Houston, Texas. On October 30, 1985, Plaintiff filed a motion to modify the Onslow County District Court decree in the 310th District Court of Harris County. Although Marjory Ann Sundholm was served with process in the Harris County proceeding, she returned with her child to North Carolina before the Harris County District Court entered its order on Plaintiff's motion to modify the decree.

On August 18, 1986, the Harris County District Court entered an order modifying the previous decree to allow Plaintiff visitation rights with his child. Marjory Ann Sundholm, however, refused to comply with the Harris County District Court's order, and, after a hearing on the matter, the Onslow County District Court refused to grant the Harris County Court's order full faith and credit. Plaintiff now asks this Court to enforce the terms of the Harris County Court's modification of the original decree.

Plaintiff invokes jurisdiction pursuant to 28 U.S.C. § 1331, alleging that this is a case arising under 28 U.S.C. § 1738A, the Parental Kidnaping Prevention Act (PKPA). The PKPA was created to relieve jurisdictional deadlocks among the states in child custody cases. Congress' principal aim was to extend the requirements of the Full Faith and Credit Clause to custody determinations, not to create an entirely new federal cause of action. *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 518, 98 L.Ed.2d 512 (1988). Unlike statutes that explicitly confer a right on a specified class of persons, the PKPA is a mandate directed to state courts to respect the custody decrees of sister states. *Id.* 108 S.Ct. at 518.

Until the Supreme Court decided *Thompson*, the Courts of Appeals were split as to whether a United States District Court had jurisdiction to decide an action under the PKPA. The Fifth Circuit had held in *Heartfield v. Heartfield*, 749 F.2d 1138 (5th Cir.1985) that the PKPA gave rise to a federal cause of action to enforce compliance with § 1738A. When Plaintiff filed this suit on May 12, 1988, his counsel did not realize that *Thompson* had effectively overruled *Heartfield* four months earlier. Plaintiff's counsel first became aware of *Thompson* when Defendants filed their

Rule 12 motions to dismiss Plaintiff's claims.

On April 24, 1989, the Court held a conference on all pending motions and informed the parties that it intended to grant Defendants' motions to dismiss for lack of subject matter jurisdiction by a separate order after a final determination of appropriate sanctions. The Court ordered all Defendants to file affidavits supporting attorney's fees incurred after each Defendant filed a motion to dismiss pursuant to Rule 12. Plaintiff subsequently filed a motion for rehearing and a motion for leave to amend his complaint.

In his motion for rehearing, Plaintiff's counsel seeks an opportunity to reargue the merits of the pending motions. Plaintiff's counsel points out that a sudden onset of illness prevented him from attending the April 24, 1989 conference. The Court declines to hear further oral argument because it has already fully considered all of the legal arguments raised in Plaintiff's motion for rehearing, as is more fully explained below.

First, Plaintiff argues that *Thompson* was wrongly decided and should not be followed. Although parties frequently disagree with the outcome of a Supreme Court case, no party has previously suggested that this Court may ignore controlling precedent from the nation's highest court. The Court declines Plaintiff's invitation to reexamine matters conclusively decided by the Supreme Court.

Next, Plaintiff asks this Court to retain jurisdiction over his claim for interference with custody rights under Chapter 36 of the Texas Family Code. However, many years ago the Supreme Court rejected the notion that federal courts have jurisdiction to entertain domestic relations cases. *Barber v. Barber*, 62 U.S. (21 How. 582) 582, 16 L.Ed. 226 (1859); *Ex Parte Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890). The "domestic relations exception" to diversity jurisdiction has been uniformly followed by the lower federal courts to avoid crowding the federal court docket with matters that are particularly suited to state court interest and expertise. *Rykers v. Alford*, 832 F.2d 895, 899 (5th Cir.1987).

Plaintiff relies on *McIntyre v. McIntyre*, 771 F.2d 1316 (9th Cir.1985) for the assertion that the domestic relations exception should be given a narrow construction. *McIntyre* involved a tort action between former spouses alleging interference with the non-custodial father's visitation rights with his minor daughter. The court exercised jurisdiction because it found that the case *did not* "implicate questions of spousal or parental status." *Id.* at 1318. Nevertheless *McIntyre* recognizes that if the status of parent and child or husband and wife is the *primary* issue in a case, a federal court must decline jurisdiction. *Id.* at 1317. The Fifth Circuit cases are in accord. *Rykers v. Alford*, 832 F.2d at 900; *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir.1981).

■ In determining the primary issue of the litigation, the decisive factor is not the formal label attached to the claim (tort, contract, etc.), but the type of determination that the federal court must make in order to resolve the case. *Rykers*, 832 F.2d at 900. If the court must determine which parent should receive custody, what rights the non-custodial parent should have, or whether a previous court's decree should be modified, the federal court should dismiss the case. *Id.* at 900. A claim based on Chapter 36 of the Texas Family Code is technically a tort, but in order to determine Plaintiff's standing to sue, the Court would have to reconcile the conflicting North Carolina and Texas decrees. If the North Carolina decree is valid, Plaintiff has no cause of action under Chapter 36 because he has no "possessory rights" under that decree. Tex.Fam.Code Ann. §§ 36.01(2), 36.02 (Vernon 1986). Because this claim cannot be decided without a determination of which state court decree is valid, and because this court lacks jurisdiction to decide that matter under *Thompson v. Thompson*, the Plaintiff's claim falls within the domestic relations exception and must be dismissed.

■ As next friend of Templeton Thompson and John Thompson, Plaintiff also seeks leave to allege a third cause of action

**150**

in his first amended complaint. Plaintiff claims he created an express trust for the benefit of the two minor children by endorsing a cashier's check with the notation "For Deposit to the Accts of Temple and Johnny Thompson—½ in Each" and delivering the check to Marjory Ann Sundholm as trustee for the children. Alternatively, Plaintiff contends that the check constituted a gift to minors pursuant to Tex.Prop. Code Ann. § 141.001 *et seq.* (Vernon 1984).

A review of Plaintiff's proposed amended complaint and Exhibit "G" attached thereto reveals that this claim is yet another baseless attempt to maintain jurisdiction in this Court. Plaintiff's explanation of the creation of an "express trust" or a "gift to minors" is contradictory and fails to meet the requirements of the Texas Trust Code or the Texas Uniform Gifts to Minors Act (TUGMA). The cashier's check Plaintiff refers to obviously does not meet the requirements of the TUGMA because it was not endorsed with the notation "as custodian for [name of minor] under the Texas Uniform Gifts to Minors Act." Tex.Prop. Code Ann. § 141.004(d) (Vernon 1984). Moreover, in this case, Plaintiff claims he made a gift to two minors, but the TUGMA does not recognize a gift to more than one minor. Tex.Prop.Code Ann. § 141.003(e) (Vernon 1984).

Likewise, the notations on the copy of the cashier's check attached as Exhibit "G" fail to meet the Texas Trust Code's definition of an express trust. Plaintiff could have created an express trust by transferring $30,000.00 to Marjory Ann Sundholm as trustee for the benefit of the two minor children, but Exhibit "G" reveals that this is clearly not the case. *See* Tex.Prop.Code Ann. § 112.001(2) (Vernon 1984). The cashier's check was made out to a person by the name of Jim Case. It was Jim Case, *not* Plaintiff who endorsed this check with the notation described above. There is no allegation that Jim Case intended to create a trust, nor does Plaintiff attempt to explain how he created this trust in light of the fact that he was not the maker, payee, or endorser of the check. The mere endorsement of a check with the notation described above does not create a trust.

Because this Court will dismiss the claims against all Defendants based on lack of subject matter jurisdiction, it is unnecessary to decide if the Onslow County District Court is entitled to Eleventh Amendment immunity. Suffice it to say that Plaintiff's collateral attack on the North Carolina court following an adverse judgment is improper. In essence, Plaintiff asks this Court to review a state court decision, which a federal district court may not do. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206. Plaintiff complains that he has no state court remedy because it is too late to appeal the North Carolina Court's refusal to enforce the Texas Order. While it is unfortunate that Plaintiff was unaware of *Thompson* until the opportunity to appeal the North Carolina order lapsed, alternative state court remedies remain available. For example, under North Carolina law, Plaintiff may file a motion to modify the custody order "at any time ... upon a showing of changed circumstances by either party ..." N.C.Gen.Stat. § 50–13.7(a) (1988).

All Defendants in this case have filed Rule 11 motions for sanctions based upon Plaintiff's failure to discover *Thompson,* which is controlling precedent for the principal issue of the complaint. The Fifth Circuit has recently clarified the duties imposed by Rule 11 in *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866 (5th Cir.1988). An attorney has an affirmative obligation to make a "reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law." *Id.* at 874. The "document" refers to any pleading, motion, or other paper that the attorney signs. Each time a paper is signed, "like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document." *Id.* at 874. If a mistake is made, there is no obligation to withdraw the document, but the attorney may not renew the contention during the course of the proceedings. Rule 11 compliance is now measured by an

objective, not subjective standard of reasonableness. An attorney's good faith effort is no longer enough to protect him from Rule 11 sanctions. *Id.* at 873.

■ Plaintiff's counsel claims that he searched the legal literature and that *Thompson* was not yet reported in the supplements to the United States Code or case digests. The fact that Plaintiff's counsel missed *Thompson* and was mistaken as to the law regarding Plaintiff's claim does not automatically mean that the mistake was unreasonable. Counsel's signature on the document is not an absolute guarantee that the theory is correct, only that a reasonable inquiry has been made. *Smith Int'l., Inc. v. Texas Commerce Bank,* 844 F.2d 1193, 1199 (5th Cir.1988). The Court finds that a reasonable inquiry into the law could fail to disclose a recently published U.S. Supreme Court opinion not yet published in the Supreme Court Reporter or included in the relevant supplements to the Code or case digests.

While there is no obligation to withdraw pleadings after controlling law has come to one's attention, Rule 11 applies to each and every paper signed during the course of the proceedings. *Thomas,* 836 F.2d at 875. Defendants brought *Thompson v. Thompson* to Plaintiff's attention when they filed their Rule 12 motions to dismiss. Plaintiff's counsel was on notice at that time that Plaintiff's claims did not belong in federal court. Counsel's signature on any further pleadings or motions is a renewed affirmation that Rule 11 has been complied with. The Court finds that after Plaintiff's attorney became aware of *Thompson,* any further claim that this Court should decide between conflicting state court custody decrees was unreasonable. *Thompson* is a United States Supreme Court case directly on point. It represents existing law, and this Court is bound by the holding unless Plaintiff distinguishes his case. Plaintiff's argument that *Thompson* was wrongly decided does not constitute a good faith argument for reversal of *Thompson* in this Court.

■ The Court finds that Plaintiff's counsel violated Rule 11 by filing Plain-

tiff's motion for rehearing and motion for leave to amend his complaint. In light of clear authority that this Court had no jurisdiction to entertain Plaintiff's claims, Plaintiff's counsel's persistence forced Defendants to incur additional litigation expenses by filing responses. Because the Court has concluded that Plaintiff's counsel violated Rule 11 only after he was fully apprised of *Thompson v. Thompson,* it will limit sanctions to the payment of Defendants' attorney's fees incurred by responding to Plaintiff's motion for rehearing and motion for leave to amend his complaint. Accordingly, it is hereby

ORDERED that all Defendants' motions for sanctions are GRANTED. Plaintiff's counsel shall pay the General Court of Justice, District Court Division, Onslow County, North Carolina, $250.00 by November 30, 1989. Plaintiff's counsel shall also pay the Sundholm defendants a total of $175.00 by November 30, 1989. It is further

ORDERED that Plaintiff's motions for rehearing and for leave to amend his complaint are DENIED. It is further

ORDERED that all Defendants' motions to dismiss for lack of subject matter jurisdiction are GRANTED.