Lori CONGLETON, Plaintiff–Appellant,

v.

**HOLY CROSS CHILD PLACEMENT AGENCY, INC., Defendant–Appellee.**

No. 90–4314.

United States Court of Appeals, Fifth Circuit.

Dec. 28, 1990.

Gregory L. Landry, Acadiana Legal Service Corp., Lafayette, La., for plaintiff-appellant.

John M. Frazier, Peatross, Greer & Frazier, Shreveport, La., for Holy Cross.

Frank W. Dawkins, Lafayette, La., for Adoptive Couple.

Before WISDOM, GEE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Lori Congleton, a Missouri resident and the birth mother of an infant boy placed for adoption by Holy Cross Child Placement Agency, a Louisiana Corporation, brought this diversity action in federal district court seeking a judgment declaring invalid a contract purportedly surrendering her parental rights. The district court dismissed the action without prejudice, relying on the so-called "domestic relations" exception to federal diversity jurisdiction. We affirm.

### I.

Congleton gave birth on April 5, 1989, in Opelousas, Louisiana, and on April 9, 1989 executed an Act of Surrender, forfeiting her parental rights and obligations, as well as custody of the child, to Holy Cross. Holy Cross placed the baby with an adoptive family in mid-April 1989, where he has remained.[1]

Congleton asks in this suit that the Act of Surrender be declared invalid for absence of effective consent. The district court abstained because resolution of the dispute would necessarily involve inquiry into the custodial status of the child. Congleton denies that she is seeking through this proceeding to have the federal court determine the rightful custody of the child; rather, she characterizes this action as presenting the narrow legal question of whether, given the circumstances of her consent, the contract by which she purportedly relinquished her parental rights was valid.

### II.

Abstention from the exercise of diversity jurisdiction in cases involving intrafamily relations is a policy of long standing in the federal courts. See, e.g., Ex parte Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); Lynde v. Lynde, 181 U.S. 183, 21 S.Ct. 555, 45 L.Ed. 810 (1901); State of Ohio v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930). As a general rule, federal courts refuse to hear "suits for divorce and alimony, child custody actions, disputes over visitation rights, suits to establish paternity and to obtain child support, and actions to enforce separation or divorce decrees still subject to state court modification." Crouch v. Crouch, 566 F.2d 486, 487 (5th Cir.1978) (citations omitted). The reasons underlying this policy of abstention include "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." Id.

The domestic relations exception, as this policy has come to be known, is not to be read expansively: "a case should not be dismissed merely because the parties are from the same family and a domestic dispute forms part of the context of the litigation." Rykers v. Alford, 832 F.2d 895, 900 (5th Cir.1987). Nevertheless, federal courts should be vigilant to discern the essential nature of a dispute, not permitting parties to avail themselves of a federal forum for their domestic claims by cloaking

---

**1.** An anonymous couple representing themselves as the adoptive couple intervened in this suit and joined in Holy Cross's motion to dismiss.

them in the trappings of a generic contract or tort proceeding. "The decisive factor," we have said, "is not the formal label attached to the claim (tort, contract, etc.), but the type of determination that the federal court must make in order to resolve the case." *Id.* Recently, we stated: "[T]he abstention issue should not be resolved by resort to 'technical appellation,' but rather by inquiry into 'whether hearing the claim will necessitate the court's involvement in domestic issues, i.e., whether it will require inquiry into the marital or parent-child relationship.'" *Rogers v. Janzen*, 891 F.2d 95, 98 (5th Cir.1989) (quoting *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir.), *reh'g denied*, 654 F.2d 723 (1981)). *See, e.g., Goins v. Goins*, 777 F.2d 1059 (5th Cir. 1985) (approving the dismissal of a claim for modification of a state child custody decree); *Jagiella*, 647 F.2d at 561 (approving dismissal of claim for modification of state custody decree and alienation of child's affection).

■ As assiduously as Congleton may contend otherwise, this case is not a simple contract claim with domestic relations "overtones." Congleton's ultimate legal objective, whether through this proceeding directly or through a subsequent state court action, is to obtain custody of the child.[2] It is likely that a federal court's determination that Congelton's consent to the Act of Surrender was ineffective would lead to that result. It is sure, however, that trial of her consent will quickly bring to center stage much, if not the whole, of the process of this private placement. The relationships among the pregnant mother, the adoption agency, and the adoptive parents will be explored, as will the promises to the mother of care, travel, and medical expenses. The "psychological" pressure upon the birth mother and her understanding of the arrangement will be at issue. This is too much of child custody and parental rights for a United States District Court.

We conclude that the final resolution of this dispute is of necessity so intertwined with parental rights and the custodial status of the child that it cannot fairly be separated; the case thereby implicates the policies supporting the domestic relations exception to federal diversity jurisdiction. We will not succumb to formalism in this species of abstention, nor permit the policies underlying it to be thwarted by procedural or legal pretense.[3]

We therefore AFFIRM the district court's order of dismissal.

---

2. Congleton's original complaint sought as an element of relief "the return of her son."

3. We rest our holding today on the doctrine of abstention. Congleton's use of 28 U.S.C. §§ 2201 and 2202 as a basis for federal jurisdiction adds nothing. The Declaratory Judgment Act "only enlarged the range of remedies available in the federal courts and does not extend or expand jurisdiction." *Port Drum Co. v. Umphrey*, 852 F.2d 148, 151 (5th Cir.1988) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)).