**J.D. FRANKS and Margaret Franks, Plaintiffs-Appellants,**

v.

**Van SMITH, etc., et al., Defendants-Appellees.**

No. 82–4572
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Oct. 14, 1983.

Jim Waide, West Point, Miss., for plaintiffs-appellants.

James M. Ward, Starkville, Miss., for defendants-appellees.

P. Roger Googe, Asst. Atty. Gen., Jackson, Miss., William H. Ward, Starkville, Miss., for Michael McCormick.

Before CLARK, Chief Judge, RUBIN and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge.

## I.

This appeal comes to us from the dismissal by the district court of the complaint which alleged a cause of action under 42 U.S.C. § 1983 based upon claimed violations of the fourth amendment and the Due Process Clause. The district court, finding that the facts contained in the complaint amounted to nothing more than a domestic relations dispute, dismissed the complaint for lack of subject matter jurisdiction. We agree that subject matter jurisdiction was lacking with respect to the child custody allegation and relief sought, but find that the case must be remanded for a determination of whether a fourth amendment violation occurred and, if so, whether the plaintiffs suffered any compensable damages.

## II.

In 1979, the appellee, Pam Strong, moved to California and left her fourteen-month-old daughter in Oktibbeha County, Mississippi, in the care of the plaintiffs, J.D. and Margaret Franks. The ostensible reason for Ms. Strong's leaving her child with the Franks was that she was unemployed and was unable to provide for the child. For the next three years, the Franks took care of the child and reared her as their own. During the interim, Ms. Strong, who allegedly obtained employment and attended school in California, visited the child only once in Mississippi. Ms. Strong argues that she was threatened by Ms. Franks, and that although she desired to visit the child more often, she was afraid to do so. The Franks deny this and argue that Ms. Strong had, in effect, abandoned the child. In 1982, Ms. Strong states that an Oktibbeha County welfare worker, Mary Hamilton, had informed her that each of the Franks had been arrested, on separate drug charges, and that their twenty-one-year-old son, who had also been arrested on a drug charge, had been sleeping in the same bed with Ms. Strong's daughter. For whatever reason, in January 1982, Ms. Strong returned to Mississippi and, while she was in the state, Ms. Hamilton and Oktibbeha County Deputy Sheriff Bubba Turner, without warrant, went to the Franks' house and demanded that the Franks turn over custody of the child, stating that the child was to be returned to Ms. Strong. The Franks initially resisted the demand. After conferring by telephone with the county prosecuting attorney, who informed Mr. Franks that failure to surrender the child could possibly subject the Franks to criminal prosecution for kidnapping, the Franks turned the child over to Ms. Hamilton and Deputy Sheriff Turner. Custody of the child was returned to Ms. Strong, who departed with her daughter for California shortly thereafter.

## III.

Mr. and Ms. Franks filed this civil rights suit under section 1983 against Ms. Strong, Deputy Sheriff Turner, Ms. Hamilton, the

county prosecutor, the county sheriff, the Director of the Oktibbeha County Welfare Department, and Oktibbeha County. The complaint alleged an invasion of the Franks' home without a warrant in violation of the fourth amendment, and alleged violation of the Due Process Clause of the fourteenth amendment and violation of the Due Process Clause of the Mississippi Constitution. The lawsuit sought an injunction for return of the child to the Franks' custody and also sought damages for the mental distress caused them by the alleged unlawful taking of the child and for the alleged anxiety caused by the entry into their home without a search warrant. A preliminary injunction compelling return of the child was sought in August 1982, but the district court denied such motion on the grounds that adjudication of the issue would involve the question of abandonment and the question of whether the Franks stood in loco parentis to the child. The court indicated that it was reluctant to rule on this question because such ruling could bind what it considered to be the proper state domestic relations court. Subsequently, in October 1982, the Franks filed suit in Oktibbeha County Chancery Court seeking custody of the child. In November 1982, the district court granted the defendants' Motion to Dismiss, finding *sua sponte* that it lacked subject matter jurisdiction over the section 1983 suit. The court found that the central issue in the case involved "nothing more or nothing less than a domestic relations contest over the custody of a minor child. It has been established law in the federal courts since at least 1890 that federal courts lack jurisdiction to entertain domestic relations controversies." The court therefore dismissed the lawsuit.

In April 1983, while this appeal was pending, the Chancery Court of Oktibbeha County found that Ms. Strong had not abandoned her daughter, that Ms. Strong was not unfit to be a mother, and that the child's best interest was to be in her natural mother's custody. The chancery court therefore dismissed with prejudice the Franks' petition for custody.

## IV.

We agree that the district court lacked subject matter jurisdiction over the question of the custody of the child. As the court below noted correctly, issues of domestic relations are the province of state courts, going back to *Ex parte Burruss,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 853, 34 L.Ed. 1500 (1890).

We note further that, even were jurisdiction present in federal court over this case, the domestic relations issue would now be moot in light of the action by the chancery court.

This leaves the issue of the alleged fourth amendment violation, which was not discussed in the lower court's order dismissing the complaint. The mere fact that a claimed violation of constitutional rights arises in a domestic relations context does not bar review of those constitutional issues. *See, e.g., Rowell v. Oesterle,* 626 F.2d 437, 438 (5th Cir.1980) (subject matter jurisdiction present in habeas action involving child custody). We therefore must consider whether subject matter jurisdiction did exist in this case as to the question of the claimed fourth amendment violation.

Unless it is determined that an asserted constitutional violation has been forwarded solely for the purpose of obtaining federal jurisdiction or is wholly insubstantial and frivolous, or unless it is determined that such an asserted violation is clearly immaterial to the case, then dismissal for lack of subject matter jurisdiction is inappropriate. *See generally Mt. Healthy City School District Board of Educators v. Doyle,* 429 U.S. 274, 279, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). The asserted violation is clearly material to the instant case, and while the facts are at best unclear as to whether there was an unlawful "search" or "seizure," or whether bona fide consent was obtained, we must take the allegations in the complaint as true for the purposes of determining subject matter jurisdiction on the face of the complaint. *See Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980). We cannot say that the asserted

fourth amendment violation is patently insubstantial or frivolous or was forwarded solely to create jurisdiction.

 We note further that there can be no doubt that the fourth amendment does apply to cases of this sort as well as to the standard criminal case in which fourth amendment claims normally arise. We must keep in mind that it is the individual's interest in being safe and secure in his or her dwelling from unreasonable searches and seizures which the fourth amendment seeks to protect. That interest is equally present regardless of whether the governmental investigation is of a criminal or civil nature. As stated in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312–13, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978),

> [t]he fourth amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. The reason is found in the "basic purpose of this Amendment ... [which] is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camera* [*v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967)]. If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards.

 It is quite settled that a section 1983 action for damages can lie against police officers acting in violation of an individual's fourth amendment rights if it is shown that such violation occurred while the officers were acting under color of state law. *Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979). A section 1983 action can also lie against others, such as social workers, where actions by them were taken in their official capacity as state employees. *See, e.g., Downs v. Sawtelle,* 574 F.2d 1, 10 (1st Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 256 (1978). As to damages, compensation may be appropriate where embarrassment or mental distress result

from deprivation of constitutional rights, as is alleged here. *See Garner v. Giarrusso,* 571 F.2d 1330, 1339 (5th Cir.1978).

Subject matter jurisdiction did, therefore, exist in the district court, and we must remand this case solely for the determination by the court on the issue of the alleged fourth amendment violation and for a determination of whether there was a violation of the plaintiffs' fourth amendment rights and, if so, whether the plaintiffs are entitled to any damages.

For the reasons set forth above, therefore, this case is

AFFIRMED IN PART AND REMANDED IN PART.