Carol A. RUBIN, et al.

v.

Philip SMITH, Sr., et al.

Civ. No. 92–273–SD.

United States District Court, D. New Hampshire.

March 11, 1993.

Carol A. Rubin, pro se.

Richard Y. Uchida, Concord, NH, for Rebecca Rubin.

Ragazzi & Stebbens, Margaret Quilter Chapple, Office of Atty. Gen., Hartford, CT, Salem, Ross, Rheault, Smith, Wayne C. Beyer, Concord, NH, Ragazzi & Stebbens, Theodore Wadleigh, Manchester, NH, Quentin & Harvey Rubin, Robert Larson, Concord, NH, Quentin & Harvey Rubin, Jonathan Katz, New Haven, CT, for defendants.

## ORDER

DEVINE, Senior District Judge.

Plaintiffs Carol A. Rubin and her daughter, Rebecca B. Rubin, bring this action against defendants Philip Smith, Sr., Fred Rheault, James Ross, the Town of Salem, New Hampshire, Dan Stebbens, John Ragazzi, Harvey Rubin, and Quentin Rubin. The plaintiffs allege that Rebecca Rubin was taken from Carol Rubin by the defendants in violation of plaintiffs' federally protected rights. Plaintiffs claim that they were denied their right of access to the courts and deprived of both the right to equal protection under the law and a constitutionally protected liberty interest, without due process of law. This action, filed pursuant to 42 U.S.C. § 1983, alleges that the plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution have been violated.[1] The matter is currently before the court on a motion to dismiss by defendants Harvey Rubin and Quentin Rubin. Plaintiffs object to this motion.

## FACTUAL BACKGROUND

Defendant Harvey Rubin and plaintiff Carol Rubin were granted a divorce by the Superior Court for the Judicial District of Danbury, Connecticut, in 1985. Custody of Rebecca Rubin, the only child of the marriage, was granted to Carol Rubin, with visitation rights to Harvey Rubin. Defendant Quentin Rubin is the father of Harvey Rubin.

In January of 1990, the Connecticut Superior Court granted temporary custody of Rebecca to Harvey Rubin following a hearing which Carol Rubin did not attend. Plaintiffs state that they had "legally" moved to Salem, New Hampshire, on December 15, 1989, and that Carol Rubin had no notice of these Connecticut proceedings. Harvey Rubin claims to have been unaware of plaintiffs' move to New Hampshire. Rebecca Rubin attended school in Salem until June, 1990.

Allegedly, Harvey Rubin enlisted the aid of defendants Dan Stebbens and John Ragazzi, members of the Connecticut State Police, in his search for Carol and Rebecca Rubin. These Connecticut police officers contacted the New Hampshire State Police and the Salem, New Hampshire Police in an attempt to find Carol and Rebecca Rubin. By June 13, 1990, Carol and Rebecca Rubin had been located in Salem by the Salem Police. Plaintiffs state that several conversations ensued between the various defendants concerning plaintiffs' whereabouts and plans for Harvey Rubin to be given custody of Rebecca. Defendants Stebbens and Ragazzi contacted the Salem Police and informed them that Harvey Rubin would come to Salem on June 13, 1990, to take custody of Rebecca in accordance with the Connecticut court order.

Defendants Philip Smith, Sr., and Fred Rheault, of the Salem Police Department, took Rebecca from her elementary school to the Salem Police Department. Some time later they gave custody to Harvey Rubin. Carol Rubin states that she had no prior notice of this action. Harvey Rubin current-

---

1. Section 1983 provides in part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

ly has physical custody of Rebecca, and they are living in Connecticut.

Carol Rubin, a pro se plaintiff, and Rebecca Rubin, represented by counsel, allege that defendants deprived the plaintiffs of their constitutionally protected interests while acting under color of state law. Specifically, they claim they were entitled to notice and an opportunity to be heard in New Hampshire before Harvey Rubin was given custody of Rebecca. Plaintiffs ask the court to grant an award of damages pursuant to 42 U.S.C. § 1983. Jurisdiction is alleged under 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4).

## DISCUSSION

Defendants move to dismiss pursuant to Rule 12(b), Fed.R.Civ.P. They seek dismissal on three grounds, stating: (1) the case falls within the domestic relations exception to federal jurisdiction, (2) the court should otherwise abstain, and, (3) the complaint fails to state a cause of action for which relief may be granted.

The standard for granting a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Id.; Arroyo–Torres v. Ponce Federal Bank, F.B.S.*, 918 F.2d 276, 277 (1st Cir.1990); *Melo–Tone Vending, Inc. v. United States*, 666 F.2d 687, 688 (1st Cir.1981).

As plaintiffs ably state, pro se complaints are held to " 'less stringent standards.' " *United States v. Michaud*, 925 F.2d 37, 41 (1st Cir.1991) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)). In particular, the court recognizes that pro se complaints under section 1983 should be "liberally construed." *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 12 (1st Cir.1990). Although section 1983 serves "as an instrument of justice in the hand of the weak against the mighty ... we also are aware of the impact of its misuse." *Dewey v. University of N.H.*, 694 F.2d 1, 3 (1st Cir. 1982). Consequently, the court will apply these precepts in resolving the matter before it.

### I. The Domestic Relations Exception

The first issue the court must address is whether this court has subject matter jurisdiction over the plaintiffs' claim. More specifically, we examine the question of whether the domestic relations exception to federal jurisdiction removes jurisdiction over this claim from the federal courts, as asserted by defendants. Defendants characterize this case as a "custody dispute", and assert that the domestic relations exception to federal jurisdiction bars this court from accepting jurisdiction. Plaintiffs argue that the domestic relations exception is inapplicable since their claim is a section 1983 action for damages, and not a request for a custody determination.

"The domestic relations exception encompasses only cases involving the issuance of a divorce, alimony or child support decree." *Ankenbrandt v. Richards*, ⎯ U.S. ⎯, ⎯, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992). Thus, in *Ankenbrandt*, the United States Supreme Court stated that the federal court could exercise diversity jurisdiction over a claim that the husband committed torts against the children. *Id.* The domestic relations exception was originally defined to encompass only suits over divorce and alimony. *Id.* at ⎯, 112 S.Ct. at 2209 (citing *Barber v. Barber*, 21 How. 582, 16 L.Ed. 226 (1859)). *Ankenbrandt* reaffirmed this "narrow range" of the domestic relations exception. *Ankenbrandt, supra,* ⎯ U.S. at ⎯, 112 S.Ct. at 2214.

Moreover, the First Circuit has stated that the domestic relations exception applies to diversity cases, and not to cases arising under the constitution or laws of the United States. *Fernos–Lopez v. Lopez*, 929 F.2d 20, 22 (1st Cir.), *cert. denied,* ⎯ U.S. ⎯, 112 S.Ct. 244, 116 L.Ed.2d 199 (1991). Many other circuits also apply this rule. *Ingram v. Hayes*, 866 F.2d 368, 371 (11th Cir.1988); *Flood v. Braaten*, 727 F.2d 303, 308 (3d

Cir.1984); *Franks v. Smith,* 717 F.2d 183 (5th Cir.1983). The domestic relations exception is "typically described as an 'exception to diversity jurisdiction.'" *Fernos–Lopez,* 929 F.2d at 22 (quoting *Sutter v. Pitts,* 639 F.2d 842, 843 (1st Cir.1981)).

Defendants assert that *Sutter* is an applicable First Circuit precedent.[2] However, in *Sutter* the relief requested by plaintiff included "physical custody of Plaintiff's minor child." *Sutter, supra,* 639 F.2d at 844. In the instant case, plaintiffs make no similar request, and merely request damages. There is no evidence before the court, nor can any inference be drawn, at this stage of the proceedings, to indicate that plaintiffs are seeking relief other than that which they have requested.

Although plaintiffs' claims arise out of a custody dispute, "adjudication of the alleged civil rights violation does not require the court to exercise jurisdiction over or resolve any of those state law matters within the scope of the domestic relations exception." *Hooks v. Hooks,* 771 F.2d 935, 942 (6th Cir. 1985).[3]

As was the case in *Fernos–Lopez,* the domestic relations exception is inapplicable here. First, this is not a diversity case. Plaintiffs' action is a section 1983 claim raising constitutional questions. Nowhere in their complaint have plaintiffs asked this court to adjudicate the matter of Rebecca's custody or otherwise delve into the parties' domestic affairs. Since the present case does not involve "the issuance [or modification] of a divorce, alimony, or child custody decree" the domestic relations exception is inapplicable. *Ankenbrandt, supra,* —— U.S. at ——, 112 S.Ct. at 2215. Plaintiffs have requested damages for deprivation, inter alia, of their constitutional interests without due process of law. Examination of plaintiffs'

claim in the light most favorable to the plaintiffs does not support the conclusion that this is actually a domestic relations case under the guise of a federal question. Therefore, the court concludes that the domestic relations exception poses no jurisdictional bar. *Accord Franks v. Smith,* 717 F.2d 183, 185 (5th Cir.1983).

## II. Abstention

Although subject matter jurisdiction may be proper, the defendants urge the court to abstain from exercising its jurisdiction for other reasons. In particular, defendants argue that the court should abstain because: (1) the plaintiffs have state remedies available to them, (2) the state courts have greater familiarity and expertise in dealing with family issues, and (3) this court should not "inject" itself into an ongoing state court matter.

The principles governing abstention are defined narrowly. As the Supreme Court recently reiterated, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Ankenbrandt, supra,* —— U.S. at ——, 112 S.Ct. at 2215 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). "Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Ankenbrandt,* —— U.S. at ——, 112 S.Ct. at 2215 (quoting *Colorado River, supra,* 424 U.S. at 818, 819, 96 S.Ct. at 1246–47, 1247); *Burns v. Watler,* 931 F.2d 140, 145 (1st Cir.1991). "Indeed, the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention." *Colorado River, supra,* 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21 (citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 318, 63 S.Ct. 1098,

---

**2.** In *Sutter,* plaintiff's case was properly dismissed, applying the domestic relations exception, where the complaint stated a civil rights action, but, with its "constitutional cloak removed," actually sought enforcement of a probate court order. *Sutter, supra,* 639 F.2d at 844.

**3.** In *Hooks,* the Sixth Circuit overturned the district court's pretrial disposition of plaintiff's § 1983 claim against certain defendants, and permitted dismissal for other defendants. *Hooks*

involved one spouse's claim that she was unjustly deprived of custody of her child. Plaintiff alleged that a conspiracy existed between various state officials and private parties. The court permitted the claim to go forward against only those defendants against whom plaintiff had alleged sufficient facts to permit a reasonable inference of conspiracy. *Hooks, supra,* 771 F.2d at 947.

1099, 87 L.Ed. 1424 (1943)). In determining whether to abstain, "only the clearest of justifications will warrant dismissal." *Id.* 424 U.S. at 819, 96 S.Ct. at 1247.

■ Defendants argue that abstention is merited because plaintiffs have "the full panoply of procedural rights available ... in state court[.]" However, plaintiffs' use or failure to use these remedies does not preclude their action in federal court. "[I]t is firmly settled that exhaustion or resort to state remedies is *not* a prerequisite to a § 1983 claim." *Miller v. Hull,* 878 F.2d 523, 530 (1st Cir.1989) (emphasis in original) (citing, inter alia, *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). Plaintiffs' ability to seek a remedy in state court is not a bar to pursuing their section 1983 claim for damages in federal court.

■ Defendants next assert that abstention is warranted because state courts are a preferable forum for family law matters due their "great familiarity with matrimonial disputes and the absence of any such expertise by the federal courts." *Bossom v. Bossom,* 551 F.2d 474, 475 (2nd Cir.1976). However, unlike *Bossom,* plaintiffs in the instant case have brought a section 1983 claim, not a diversity claim seeking modification of a divorce decree on a state law ground.[4] Plaintiffs herein have not asked this court to make a best-interest-of-the-child determination or adjudicate any purely family law issues. What plaintiffs have requested is a determination of whether their federally protected rights were infringed upon. Abstention due to a lack of expertise on family law matters is not warranted "because the allegations in this complaint do not request the district court to issue a divorce, alimony or child custody decree[.]" *Ankenbrandt, supra,* —— U.S. at ——, 112 S.Ct. at 2216.

■ Lastly, defendants urge the court to abstain in accordance with the principles of *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971), and its progeny. *See Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979) (applying *Younger* in state child-custody proceeding). Specifically, defendants assert *Younger* abstention is warranted to avoid interference by this court with an ongoing family law action in state court. The instant case is distinct from those cited by defendants for several reasons.

Defendants cite cases warranting abstention where plaintiffs sought to enjoin an ongoing state action. *Id.* 442 U.S. at 418, 99 S.Ct. at 2374; *Younger, supra,* 401 U.S. at 39, 91 S.Ct. at 748; *Pennzoil Oil Co. v. Texaco, Inc.,* 481 U.S. 1, 4, 107 S.Ct. 1519, 1522, 95 L.Ed.2d 1 (1987). However, plaintiffs have not asked this court to enjoin an ongoing state procedure or issue declaratory relief on a pending Connecticut court matter. *Cf., Malachowski v. City of Keene,* 787 F.2d 704, 709 (1st Cir.), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986).[5]

The ongoing case before the Connecticut court is one which apparently involves the custody of the minor child. Plaintiffs' 1983 claim arises from the acts of the Salem, New Hampshire, police department and other events. Issues arising from these acts are distinct from those before the Connecticut court. The matter of whether plaintiffs were deprived of their constitutional rights by events occurring in New Hampshire is not before the Connecticut court, which will hear the divorce and custody matters. Abstention is not warranted in the present case, under the *Younger* abstention doctrine, because this court's decision will "not enjoin or inter-

---

4. The plaintiff in *Bossom* brought an action in federal court, based on diversity, asking the court to declare invalid a stipulation which was incorporated into the divorce decree. The Second Circuit, while inclined to think the *Bossom* action fell within the matrimonial exception itself, at the very least felt it was a strong case for abstention because, even if the action was "on the verge" of the exception, there was no obstacle to a full and fair determination in state court. *Bossom, supra,* 551 F.2d at 475-76.

5. The First Circuit in *Malachowski* considered pro se plaintiffs' § 1983 claim in a child custody matter, applying *Younger* in abstaining from hearing plaintiffs' requests for injunctive and declaratory relief. However, the *Malachowski* court gave consideration to plaintiffs' damage claims before rejecting them for other reasons. *Malachowski,* 787 F.2d at 709.

fere with any state proceeding [which is] pending." *Rivera–Puig v. Garcia–Rosario,* 983 F.2d 311, 319 (1st Cir.1992). "The present situation is not the type contemplated by the *Younger* abstention doctrine." *Id.* at 320.

The ongoing jurisdiction of Connecticut courts in matters related to child custody does not counsel against this court's exercise of jurisdiction over plaintiffs' section 1983 claim for damages. Accordingly, abstention is not warranted in the instant case.

*III. Failure to State a Claim*

Having found subject matter jurisdiction, and concluding that abstention is not warranted, the court turns to defendants' assertion that plaintiffs' section 1983 complaint fails to state a claim on which relief may be granted. Rule 12(b)(6), Fed.R.Civ.P. A plaintiff must allege two elements to establish a claim for relief under section 1983: first, "that they were denied some right 'secured by the constitution and laws' of the United States," and, second, "that [defendants] deprived them of this right while acting 'under color of state law.'" *Rodriguez–Garcia v. Davila,* 904 F.2d 90, 94 (1st Cir. 1990) (quoting *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978)); *Kamasinski v. Rubin,* 764 F.Supp. 741, 742 (D.Conn.1991) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970)), *aff'd,* 962 F.2d 3 (2d Cir.1992).

The standard for granting a motion to dismiss for failure to state a claim is well established. The court must "accept all well-pled factual averments as true, and draw all reasonable inferences" in favor of the non-moving party. *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989) (citing *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 276, 96 S.Ct. 2574, 2577, 49 L.Ed.2d 493 (1976)). However, the court need not rely on "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" *Id.* (quoting *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987) (quoting *Snowden v. Hughes,* 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944)), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765

(1987)). "A complaint should not dismissed be unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Kamasinski, supra,* 764 F.Supp. at 742 (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Dartmouth Review, supra,* 889 F.2d at 16.

▆ In support of the first element of this section 1983 claim, plaintiffs assert, inter alia, that Carol Rubin was deprived of a constitutionally protected liberty interest in the custody of her child without due process of law. "It is well-settled that parents have a liberty interest in the custody of their children." *Hooks, supra,* 771 F.2d at 941 (citing *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972)); *Hurlman v. Rice,* 927 F.2d 74, 79 (2d Cir.1991). Therefore, "any deprivation of that interest by the state must be accompanied by procedures meeting the requirements of due process." *Hooks, supra,* 771 F.2d at 941; *accord Hurlman, supra,* 927 F.2d at 79. This due process requirement is "[g]enerally in the form of a predeprivation hearing." *Id.* (citing *Stanley, supra,* 405 U.S. at 649, 92 S.Ct. at 1211).

The first element of this section 1983 claim is satisfied at this stage if plaintiffs adequately allege they were deprived of their constitutionally protected liberty interest without due process of law. Carol Rubin asserts that she had no notice of the January 1990 hearing in Connecticut at which Harvey Rubin was awarded temporary custody. Plaintiffs further state that they "legally" moved from Connecticut to New Hampshire on December 15, 1989. Finally, plaintiffs state that they received no due process in New Hampshire prior to the deprivation of their liberty interest. By alleging a wrongful deprivation of the physical custody of Rebecca Rubin, plaintiffs satisfy the first element of their section 1983 claim. *Hooks, supra,* 771 F.2d at 942. For purposes of this motion, no more is required, and the court finds that this element is satisfied.

The second element of this section 1983 claim requires that the deprivation occur under "color of state law." *Adickes, supra*, 398 U.S. at 150, 90 S.Ct. at 1604. Plaintiffs allege, inter alia, that Salem Police officers physically performed the act which infringed upon plaintiffs' federal rights and that they did so "in concert with" Harvey and Quentin Rubin. Clearly, the Salem Police acted under color of state law when taking Rebecca from her school and giving custody to Harvey Rubin. At issue here is whether this second element is satisfied with respect to Harvey and Quentin Rubin.

While state action is required under the second element, "[a] private party can be held liable under § 1983 if engaged in a conspiracy with a state actor." *Kamasinski, supra*, 764 F.Supp. at 743 (citing *Adickes*, 398 U.S. at 152, 90 S.Ct. at 1605). "Private persons, jointly engaged with state officials in the prohibited action, are acting under color of state law for purposes of [§ 1983]." *Adickes, supra*, 398 U.S. at 152, 90 S.Ct. at 1605. The joint engagement requirement can be satisfied by many types of interactions between private parties and state officials. *Rodriguez, supra*, 904 F.2d at 95; *Lugar v. Edmunson Oil Co.*, 457 U.S. 922, 939, 102 S.Ct. 2744, 2754–55, 73 L.Ed.2d 482 (1982). The critical question before the court is whether Harvey Rubin and Quentin Rubin engaged in a conspiracy with the Connecticut and Salem police sufficient to maintain a section 1983 claim.

To answer this question, we must examine plaintiffs' claims against both Quentin Rubin and Harvey Rubin to determine whether the allegations of a conspiracy are sufficient to satisfy this element. It is well settled that a civil rights action must be specifically pleaded to withstand a motion to dismiss. *Johnson v. General Elec. Co.*, 840 F.2d 132, 138 (1st Cir.1989); *Dewey, supra*, 694 F.2d at 3. A 1983 claim must "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." *Dewey, supra*, 694 F.2d at 3 (citing *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980); *Cohen v. Illinois Institute of Technology*, 581 F.2d 658 (7th Cir.1978)). "The threshold [for stating a claim] may be low,

but it is real—and it is the plaintiff's burden to take the step which brings [her] case safely into the next phase of litigation." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

Plaintiffs have not met this burden with respect to Quentin Rubin. The claims against Quentin Rubin cannot reasonably be described as more than "subjective characterizations." The plaintiffs allege that Quentin Rubin acted "in concert with" and "conferred with" several other defendants. These statements are the most specific statements made in plaintiffs' complaint about Quentin Rubin's conduct. The only other allegation made by plaintiffs in regard to Quentin Rubin is that he is Harvey Rubin's father. This will not suffice. Thus, plaintiffs have failed to plead facts that sufficiently allege that Quentin Rubin participated in a conspiracy with the other defendants. Furthermore, plaintiffs' claims do not permit a plausible inference that Quentin Rubin was involved in such a conspiracy.

While the court is most cognizant of the need to liberally construe pro se plaintiffs' pleadings, the "defendant's interests are entitled to recognition as well as the plaintiff[s']." *Dartmouth Review, supra*, 889 F.2d at 23 (quoting *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 88 (2d Cir.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961)). For the foregoing reasons, the court grants defendant Quentin Rubin's motion to dismiss.

Next, the court must decide whether the allegations against Harvey Rubin are sufficient to permit plaintiffs' claim to go forward. Plaintiffs' allegations in regard to Harvey Rubin include those made against Quentin Rubin as well as several additional, more specific, statements. In particular, plaintiffs allege that Harvey Rubin was the party who: obtained an "unenforceable" order, coordinated his plans with the Connecticut police, had several phone calls made at his behest by the Connecticut police to the New Hampshire and Salem police, came to Salem, and "illegally" took custody of Rebecca with the aid of the Salem police. These statements made by plaintiffs about Harvey Rubin meet the "minimal facts" standard and go beyond

subjective characterizations. Plaintiffs' claims are sufficiently specific to require further inquiry into the conduct which they describe.

■ The final question before the court is whether these statements made by plaintiffs and any reasonable inferences drawn from the statements adequately allege a conspiracy between Harvey Rubin and the various state officials sufficient to create liability under section 1983. *Adickes, supra,* 398 U.S. at 152, 90 S.Ct. at 1605. Whether the relationship between the private party and the state official is sufficient to create liability for the private party depends on the level and nature of the joint participation. *Lugar, supra,* 457 U.S. at 939, 102 S.Ct. at 2754–55; *Apostol v. Landou,* 957 F.2d 339, 343 (7th Cir.1992).[6] Thus, a determination of whether allegations are sufficient to survive a motion to dismiss is "'necessarily fact based.'" *Rodriquez–Garcia, supra,* 904 F.2d at 94 (quoting *Lugar, supra,* 457 U.S. at 939, 102 S.Ct. at 2754–55).

The court's determination must be made by taking plaintiffs' explicit allegations as true and drawing reasonable inferences in the light most favorable to the plaintiffs. Using this standard, "we cannot say that there is no set of facts that plaintiff[s] may prove" which would demonstrate that Harvey Rubin took part in a conspiracy to deprive plaintiffs of a right. *Hooks, supra,* 771 F.2d at 946. The court finds that plaintiffs have met their burden by pleading sufficient facts in regard to Harvey Rubin's alleged conspiracy with the other defendants to allow this action to go forward.

### CONCLUSION

For the reasons set forth above, the court denies defendant Harvey Rubin's motion to dismiss (document no. 23), but grants Quentin Rubin's motion to dismiss (document no. 23).

SO ORDERED.

**6.** In *Apostol, supra,* 957 F.2d at 343, the Seventh Circuit overturned the district court's sua sponte dismissal of a § 1983 claim against a private party to permit further examination of the facts concerning the state action element.